[No. 38872.    Department One.    December 29, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE CURTIS SCHAFFER *et al., Appellants.**

*Lockett & Johnson* and *William F. Lockett,* for appellants.

*Charles O. Carroll, David H. Beitz,* and *Bruce D. Brunton,* for respondent.

*Reported in 422 P.2d 285.

BARNETT, J.†—The defendants, Larry and Ann Schaffer, husband and wife, are charged with five counts of forgery in the first degree. From a judgment of conviction based upon the verdict of the jury, they appeal to this court.

This stems from another crime, the burglary of over 400 blank money orders from Big John's Thriftway in Seattle in March, 1965. These money orders could be cashed up to the value of $150 each. Many of the money orders have been cashed in Seattle and in other geographically diverse cities as Portland, Oregon and Kansas City, Missouri.

The testimony elicited by the prosecution shows that the defendants had possession of some of the blank money orders and that they had devised a scheme for cashing them. The testimony indicates that one or the other of the defendants would take a third party to a prospective victim, provide identification, and have the third party cash the filled-in money orders under the name which corresponded to the name on the identification. The person cashing the money orders would get a small part of the proceeds and the defendants would keep the balance.

A witness testified that defendant Larry Schaffer had approached him offering to pay money for the killing of Bonny Jean Kelly, a witness in this case and one of the persons the defendants had used to cash the money orders.

The defendants list seven assignments of error in their brief, but argue only four. It is a well established rule that assignments of error not argued in the brief are waived and will not be considered by this court. *Hutchinson v. Port of Benton,* 62 Wn.2d 451, 383 P.2d 500 (1963) and cases therein cited. In accordance with the above rule we exclude defendants' assignments of error 5, 6, and 7 from our consideration, except as they may have been included in the other assignments of error.

Shifting now to the legal questions presented by the defendants' brief, we quote the first assignment of error:

1. The Court erred in refusing to compel the attendance of a witness on the behalf of appellants and such

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

refusal constituted a denial of their constitutional right of compulsory process in criminal cases.

A proper resolution of the issues involved in this assignment of error require an extended statement of the facts.

On March 14, 1966, two days prior to trial, defense counsel obtained an order endorsing as a witness Charles Adams and directing the issuance of a subpoena for him. This order directed Adams to appear at 1:30 p.m. March 16, 1966. During the first day of trial, March 16, 1966, no request was made by defendants for the court to issue compulsory process to Adams. The second day of the trial was set to commence at 9:30 a.m. Defense counsel did not appear until 10:58 a.m., although all other parties and the jury were present at 9:30 a.m. On the afternoon of the second day of trial, after the prosecution had rested its case, the defense made a request for the issuance of a bench warrant for Charles Adams. At this point we quote from the record for purposes of clarity as to the colloquy between defense counsel and the court concerning the proposed witness Charles Adams.

MR. HATTEN: I had an order signed for a witness and when I gave it in to the Clerk's office I haven't seen this witness. I have been trying to locate him, this Charles "Chuck" Adams. The Presiding Judge signed an order directing the Clerk to subpoena that witness, together with Detectives Short and Poth, who are here. I have been unable to locate that witness.

THE COURT: Yes, that order was issued March 14th by the Presiding Judge directing the witness to appear March 16th at—

MR. HATTEN: I have been looking for that witness and trying to locate him and I have looked in the courtroom, I mean in the hall, and I made every effort to locate that witness since that subpoena was issued.

If the witness is not present I direct that a bench warrant be issued.

THE COURT: Do you know whether the subpoena was served?

MR. HATTEN: I have no direct knowledge. I was assured that it would be.

THE COURT: Well, Madam Bailiff, will you inquire of

the Sheriff's office and show them the order and ask if they received the subpoena and if it has been served, and if so, when. If it has been and the witness has failed to appear, a bench warrant will issue. May we go ahead with what other proof you have?

MR. HATTEN: Yes, your Honor.

Defendants then proceeded with their case in chief. After extensive direct and cross-examination of the defendant Larry Schaffer, Deputy Sheriff Anthony was examined by the court concerning the service of the subpoena issued for Charles Adams. Deputy Anthony testified that the wrong address was on the subpoena, but after some investigation he obtained Adams' present address and made a second trip to try and serve Adams. On this second trip the deputy found Adams not at home, but that this new address was proper and he left the subpoena with a young woman who said she was employed by Mr. Adams.

Immediately after the court examined Deputy Anthony the defense counsel called defendant Ann Schaffer who was subjected to direct and cross-examination. It was not until the close of the examination of Ann Schaffer that defense counsel sought again to get the proposed witness Charles Adams into court. The following quotation from the record indicates what transpired at this time.

THE COURT: As I understand it, Mr. Hatten, you want the Court to do something with reference to the absent witness, Mr. Adams.

MR. HATTEN: Yes, I understand your Honor had ruled that a Bench warrant should be issued for Mr. Adams. The subpoena was ordered on the 14th and we have had testimony in the absence of the jury that effort was made to subpoena Mr. Adams on the 15th. I was not advised that he had not been subpoenaed and believed that he would be and I made some effort to get ahold of him myself. I understand that he is a business man and can easily be located. We are nearing the end of the day and if we get a subpoena out for him right now we could have him first thing in the morning. I submit that he can give competent evidence that would tend to support the defendants' case.

He would testify in essence, I have a signed statement by Mr. Adams—Incidentally, I might state that this

statement was furnished me, this statement of Charles Adams, was furnished me by Bill Lockett, and this would be an additional reason why I would want a subpoena for Bill Lockett, William Lockett. This is a statement given by Charles Adams which relates to the case.

For the purpose of this motion I will introduce or offer this in evidence in the absence of the jury for the purpose of the motion.

THE COURT: It may be marked as Defendants' No. 10.
(Defendant's Exhibit No. 10 was marked for identification.)

MR. HATTEN: I know that the exhibit is not evidence in and of itself but it shows the type of testimony that I can expect to elicit from the witness Charles Adams.

The offer of proof was a letter purportedly written by Charles Adams which is set out in full, and as written, below.

Deposition of Charles Adams
3-14-66

I Charles Adams was called by Detective Jerry Poth 3-2-66 of Seattle Police Dept. I was asked if I had ever repayed [sic] Seattle First National Bank. These questions were asked, "as in May or June of 1965, I received a as [sic] down payment on a [sic] automobile which involved several money orders where I was employed as Manager. I had deposited these money order [sic] in the Bank and later was informed by Seattle Police the money orders had been stollen [sic]. I gave the police a description of the man I received the money order from as his name & address appeared on the face of the instruments. Det. Poth asked me if I knew Larry Shaffer [sic] I informed him I did," he stated Larry's case is coming up soon, "& Larry Shaffer [sic] was going 'up the River' & that the money order I received were [sic] from the same bunch stollen [sic] in Shaffer [sic] case. Det Poth told me I could go to jail for Grand Larceny if I did not change my story as to where & whom I received the money orders from. I informed Det Poth I had given him all the information I knew concerning the man I received the money order from, & in fact I received my knowledge of Larry Shaffer's [sic] complicity envolving [sic] the money order from the news papers. Det Poth stated he would talk to his superior as to charging me and to call him at 12:00 the following day," I return the call &

stated again I had previously given all information I knew concerning the case involving money orders.

> Sign; Charles Adams
> 3-14-66.

Attorney; I have written this deposition for Larry Shaffers [sic] I have the proper date appearing—I am busy to day and trust this will aid you in your defence [sic] of Larry.

> Sincerely
> Charles Adams

After the offer of proof was made and after it appeared to the defense counsel that the court would not direct a bench warrant, he requested that a second subpoena be issued for Adams and moved for a continuance of the trial so that Adams could appear at the trial. This motion was made in the afternoon of the second day of trial, and after counsel had been told that the trial would end that day. Defendants' motion for a continuance was denied and the second subpoena for Adams was not issued.

It is within this context that defendants claim that their right of compulsory process has been denied. At the time of defense counsel's request for a bench warrant or for the issuance of another subpoena, the granting of such a request would involve a continuance of the trial, since the court had indicated that it expected to finish the case that day.

We have said that compulsory process in criminal cases involves such disparate elements as surprise, diligence, materiality, and maintenance of orderly procedures; and this court leaves the decision largely to the discretion of the trial court to be disturbed only on a showing that the accused was prejudiced by the denial. *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966). See also *State v. Leroy*, 61 Wash. 405, 112 Pac. 635 (1911).

The record before this court is replete with evidence of lack of diligence on the part of the defendants. The witness Adams was ordered to be in court on March 16, but there was no attempt by the defendants on that day

to invoke compulsory process when Adams did not appear as directed. Even on the second day of trial defendants did not move for compulsory process until sometime later in the afternoon even though they knew that Adams had not appeared the day before as ordered. Thus the record shows that the defendants were not diligent either in their request for the bench warrant or the issuance of a second subpoena. They knew their witness had not appeared at the appointed time. Furthermore, they had not determined whether or not the first subpoena had been personally served. At the time they requested a bench warrant defense counsel was unable to inform the court that there had been service; hence it was incumbent upon the court to delay the trial to determine whether there had been service by summoning a deputy sheriff. It was only after the testimony of the deputy sheriff that another subpoena was requested. Such tactics on the part of the defense would necessarily require the court to continue the case. Even if a continuance had been granted and the proffered testimony had been admitted, it is not likely that it would have changed the result; therefore, there was no abuse of discretion. *State v. Moore,* 69 Wn.2d 206, 417 P.2d 859 (1966).

In view of these circumstances with no prejudice having been shown the trial court did not abuse its discretion in refusing to grant the continuance.

After a review of the briefs and the record we find assignments of error 2, and 3, with reference to bail and keeping the jury together to be without merit.

Lastly, it is urged that the court erred in refusing an order to subpoena William Lockett and refusing to grant a continuance for that purpose. In requesting the subpoena for William Lockett, defendants stated two reasons: (1) William Lockett would be able to explain prior convictions of Larry Schaffer, and (2) William Lockett had received the letter written by Charles Adams and he would establish that fact.

■ Neither reason given for the requested subpoena and continuance is valid. Testimony by William Lockett as

a former attorney for Larry Schaffer in criminal proceedings was not admissible to explain prior convictions of Larry Schaffer. The ruling with reference to the witness Adams disposes of the second contention.

The judgment is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.