[No. 38835.   Department Two.   December 30, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. REUEL W. MISSMER, *Appellant.**

*Reported in 435 P.2d 638.

*Owens & Johnson* and *Burton R. Johnson*, for appellant (appointed counsel for appeal).

*Harold R. Koch* and *F. Parks Weaver, Jr.*, for respondent.

NEILL, J.—Defendant appeals from a conviction and sentence for "child stealing," being second degree kidnapping under RCW 9.52.010(2), the pertinent provisions of which are:

> Every person who shall wilfully,
>
> . . . .
>
> (2) Lead, take, entice away or detain a child under the age of sixteen years with intent to conceal him from his parent, parents, guardian or other lawful person having care, custody or control over him, . . . shall be guilty of kidnaping in the second degree and shall be punished as in the case of a felony.

Defendant is represented on this appeal by appointed counsel who was not trial counsel.

On August 31, 1965, defendant, who was residing near Shelton and then unemployed, drove his "ambulance" (an old station wagon which at one time had been fitted out for

ambulance service) to Olympia to seek employment. After making inquiry at the Olympia hospital and at the Olympia office of the Washington State Employment Service, he walked over to Capitol Lake park where boys and girls were swimming and playing. He there accosted a 14-year-old girl and asked her if she would be interested in "assisting in organizing and helping with a first aid class" for which she was to be paid $1.60 per hour. The girl and a girl friend had been left at the park with arrangements that the friend's father would pick them up there at 5:30 in the afternoon. Defendant asked the young girl to go with him to his "office" and demurred about her first calling her mother. Defendant was a certified first aid instructor, but he had no office of any kind.

The defendant and the girl left the park in defendant's automobile and spent approximately half an hour driving around through the main thoroughfares of Olympia and Tumwater. While driving around, defendant asked the girl if she knew anything about delivering babies at an accident and showed her the "pressure points" on her arm and leg. About 5 p.m., defendant drove to the freeway on the Shelton-Aberdeen route. As he drove up on the "on ramp" to the Shelton-Aberdeen freeway, his automobile ran out of gasoline. He turned around and headed back toward Olympia, thus placing the automobile in a position of going the wrong way on a one-way ramp. He asked the girl to watch his automobile while he went for gasoline. He walked back into town, obtained the gasoline and returned to the vehicle. During the period of approximately 10 minutes that defendant was obtaining the gasoline, a deputy sheriff observed the vehicle facing the wrong way on a one-way ramp with the 14-year-old girl standing in front of the automobile, so he stopped to make inquiry as to what she and the automobile were doing in this location. He was still interrogating her when defendant returned with the gasoline. Defendant protested to the officer that "he was doing nothing wrong," but was unable to satisfy the officer as to the circumstances. The defendant was taken to the court-

house for further inquiry. The charge and conviction presently under appeal resulted.

During trial, the defendant testified and admitted to prior convictions for adultery and for statutory rape.

Defendant assigns as error the trial court's failure to grant a motion to dismiss at the close of the state's case; the giving of instruction No. 3;[1] the trial court's failure to grant a new trial or in the alternative arrest of judgment; and that the foregoing statute is unconstitutional as being so vague and indefinite in form and as interpreted as to fail to give fair notice of what acts will be punished thereunder.

■■■ Defendant first argues that under RCW 9.52.010(2), *actual* concealment must be proven to take the case to the jury and that no evidence of concealment was presented. Actual concealment is not a necessary element of the offense under the statute. Defendant cites *State v. Hoyle*, 114 Wash. 290, 194 Pac. 976 (1921) and *State v. Berry*, 200 Wash. 495, 93 P.2d 782 (1939), to support his position that actual concealment is a necessary element of the crime, but in neither case was the issue of actual concealment as opposed to intent to conceal before the court.

---

[1] "To convict the defendant of the crime of KIDNAPPING IN THE SECOND DEGREE as charged, the State must prove to you beyond a reasonable doubt each of the following elements:

"1. That on or about the 31st day of August, 1965, the defendant, Reuel W. Missmer, did take, lead, entice away or detain one . . . [name omitted by us], under the age of sixteen (16) years.

"2. That it was wilfully committed and without authority of law; in other words, unlawful.

"3. That the accused committed all of the above acts with intent to conceal the child from its parents or other person then having lawful care and control of the child—no matter who.

"4. That the acts of defendant occurred in Thurston County, Washington.

"If you find from all of the evidence in this case that the State has proved beyond a reasonable doubt each and all of the foregoing elements of the crime set forth above, then it will be your duty to return a verdict of 'guilty.'

"On the other hand, if, after weighing all the evidence, or lack of evidence, you entertain a reasonable doubt that the defendant is guilty, then you should return a verdict of 'not guilty.' "

The proof need only show that defendant led, took, enticed away or detained the child *with intent* to conceal her from her parents. See *State v. Pudman*, 65 Ariz. 197, 177 P.2d 376 (1946); *People v. McGinnis*, 55 Cal. App. 2d 931, 132 P.2d 30 (1942); 68 A.L.R. 719. Moreover, defendant seems to misunderstand the meaning of the word "conceal" as it is used in the statute. In *People v. McGinnis, supra*, at 936, the court held:

> The common definition of the word "conceal" is "to hide or withdraw from observation; to cover or keep from sight." *It does not necessarily mean that the concealed individual or hidden object may not be located or found by reasonable means of discovery.* (Italics ours.)

Clearly, the girl could have been as well concealed from her parents in defendant's automobile traveling along one of our high-speed freeways as she could have been in a deserted cabin in the country.

■ Defendant next contends that there was no evidence that he did "lead," "take," "entice away," or "detain" the girl as those words are used in RCW 9.52.010(2). Websters New Twentieth Century Dictionary (2d ed. 1960) defines "entice" as meaning "to allure; to lead on by exciting hope of reward or pleasure; to tempt" and defines "lead" as meaning "to direct; . . . to draw; to entice; to allure; . . . to induce; to prevail on; to influence." Similarly, Blacks Law Dictionary (4th ed. 1951) defines "entice" as meaning "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax, or seduce . . . [t]o lure, induce, tempt, incite, or persuade a person to do a thing." In the case at bar, defendant's offering a 14-year-old child a job with payment of $1.60 per hour and requesting that she come with him to his office, when defendant in fact had no office and was unemployed, clearly constituted "enticing away" as those words are used in the aforementioned statute.

■ Defendant next argues that there was no evidence pertaining to his acts or conduct from which the jury could find that he had the requisite intent to conceal the child

from her parents. Substantial evidence must exist to sustain a finding of this specific intent. All the acts and conduct of the defendant, together with all the other circumstances in the case, will be considered. As stated in *State v. LaVine*, 68 Wn.2d 83, 86, 411 P.2d 436 (1966):

It is not necessary that the assailant express his intent verbally. A jury can infer from his conduct and from the surrounding circumstances that he intended to achieve his purpose . . . .

■ Defendant contends that he intended to return the girl to the park by the appointed time, that she was not "enticed" since she was not particularly interested in his job offer, and that it was not shown that she was concealed from her parents since he at all times drove on main, well-traveled thoroughfares in and around the Olympia area. But as we said in *State v. Jackson, ante* p. 50, 60, 431 P.2d 615 (1967):

All of these matters going to the question of parental consent and intent to conceal the girl from her parents were quite properly presented to the jury. But, they were just that—matters of defense, facts to be considered by the jury in determining the issues of parental consent and intent to conceal.

The evidence, from which the jury could have inferred defendant's intent to conceal the girl, established that (1) defendant "enticed" the girl into his car for a ride to his "office" with offers of employment and payment; (2) at that time he had no office and was unemployed; (3) while driving the car, he felt the "pressure points" on the child's arm and leg and talked with her about delivery of babies; and (4) he was headed out a freeway away from the Olympia area shortly before the time the girl was to be met by her friend's father. In *State v. Jackson, supra*, at 61, we said:

In reviewing a criminal conviction, we do not say that a court of appeals is completely devoid of power to examine the record and ascertain therefrom if the evidence in sum proves a crime and that the defendant committed it. There must be some small interstice left for the inter-

vention of appellate jurisdiction where, despite a verdict of conviction, the whole record does not prove a crime or defendant guilty. But, notwithstanding this reservation of appellate power, the verdict of the jury remains paramount. Where there is substantial evidence to prove a crime and the defendant's commission of it, the jury is the sole and exclusive judge of the evidence and its verdict is conclusive as to the facts. *State v. Davis*, 53 Wn.2d 387, 333 P.2d 1089 (1959).

Defendant also contends that if we define "lead, take, entice away or detain a child" and "intent to conceal" as embracing the conduct evidenced in the instant case, then the very definition embracing that conduct is unconstitutionally vague under the sixth and fourteenth amendments of the United States Constitution and under Const. art 1, § 22. The general principles governing this final issue are cogently explained in *State v. Galbreath*, 69 Wn.2d 664, 419 P.2d 800 (1966), beginning at 667.

■ We hold that the words "lead, take, entice away or detain . . . with intent to conceal him from his parent" as used in RCW 9.52.010(2) are "common words, of common usage, and enjoy a commonly recognized meaning among people of common intelligence." *Galbreath, supra*, at 668. The statute involved in the case at bar defines with sufficient clarity for persons of ordinary intelligence that conduct which is prohibited and requires no speculation as to its meaning or application.

■ Defendant's attack on instruction No. 3 in this court is that it fails to adequately define the element of specific intent of defendant to "lead, take, entice away . . . with intent to conceal . . . . " However, defendant's trial exception to the instruction was on an entirely different ground and the current attack is raised for the first time on appeal. Further, defendant did not request an instruction on specific intent. No error attaches to failure to instruct if no request is made. *Seattle v. Love*, 61 Wn.2d 113, 377 P.2d 255 (1962); *State v. Goldstein*, 58 Wn.2d 155, 361 P.2d 639 (1961); *State v. Lyskoski*, 47 Wn.2d 102, 287

P.2d 114 (1955). Further, instruction No. 10,[2] read in conjunction with instruction No. 3, adequately covers this element.

Judgment affirmed.

FINLEY, C. J., DONWORTH and HUNTER, JJ., and WARD, J. Pro Tem., concur.

---

[2]Instruction No. 10: "You are further instructed that every person is presumed to intend the natural consequences of his act or acts." *Cf.* Calif. J.I.C. No. 674.