[No. 39664.    Department Two.    July 18, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. AMADO GUERRA
CADENA, *Appellant.**

*Reported in 443 P.2d 826.

*Robert S. Egger,* for appellant.

*Charles O. Carroll* and *Donald D. Skinner,* for respondent.

Donworth, J.†—March 1, 1967 one Robert Ronald Perra was shot to death in a Seattle tavern. An autopsy revealed that Perra had been shot four times. Shortly after the shooting appellant was arrested near the tavern and at that time he was advised of his constitutional rights. The pistol that fired the shots was never found.

March 3, 1967 appellant was arraigned at a preliminary hearing where he was represented by his present counsel. March 5, 1967, the sister-in-law of the deceased visited appellant in jail. At a hearing held pursuant to CrR 101.20W, the sister-in-law testified that appellant told her "that he was sorry that he killed Bobby." The trial court, ruling this statement admissible, entered the following findings of fact:

### Findings As to Undisputed Facts

#### I.

The defendant is of Mexican descent, 42 years old, and finished his formal education in Texas at the fifth grade. He completed his high school education at the Walla Walla penitentiary.

#### II.

On March 5, 1967, Mrs. Perra telephoned Detective Wilson, Seattle Police Department, and inquired as to

---

†Judge Donworth is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

permission to speak to the person charged with the murder of her brother-in-law.

## III.
Detective Wilson indicated that the request was unusual, and would find out if it was permissible. Detective Wilson returned the phone call and told Mrs. Perra that permission to see the defendant had been granted by Officers at the King County Jail.

## IV.
The defendant was being held in the King County Jail, and Mrs. Perra visited him there.

## V.
The defendant was called from his cell and told that someone was there to see him. He was directed to the front gate. This was customary procedure.

## VI.
The conversation in the jail between the defendant and Mrs. Perra was conducted out of the hearing of the officials of the jail.

## VII.
Mrs. Perra sought to elicit information and knowledge about the death of her brother-in-law.

## VIII.
The conversation between the defendant and Mrs. Perra occurred after the defendant had been arraigned on the present charge, and after he had retained counsel. Mrs. Perra had been informed that the defendant had retained counsel.

## IX.
The arrangements for this conversation were made by Sgt. Wilson of the Seattle Police Department, Homicide and Robbery Division, with King County jail officials without consulting the defendant's attorney.

## X.
Det. Sgt. Wilson was one of the members of the Seattle Police Department assigned to investigate the Perra homicide.

## XI.
The defendant made no request that his attorney be present prior to or during the conversation with Mrs. Perra.

### DISPUTED FACTS

There is a conflict between the testimony of Mrs. Perra and the defendant as to the substance of what was said at the King county jail on March 5, 1967.

### FINDINGS AS TO DISPUTED FACTS

The court makes no findings as to the substance of what was actually said, that not being determinative of the admissibility of the conversation.

### SPECIAL FINDING

The appearance of Mrs. Perra at the King County jail and her conversation with the defendant were not a calculated effort on the part of the police to gain information from the defendant.

At the jury trial this statement allegedly made by appellant was testified to by the sister-in-law, Mrs. Perra.

■ In his first assignment of error, appellant asks this court to anticipate what decision the Supreme Court of the United States may make in the future and hold that the due process clause of the fourteenth amendment to the United States Constitution makes applicable to the states that portion of the Fifth Amendment requiring a person charged with an infamous crime to be indicted by a grand jury. For the reasons enunciated in *State v. Kanistanaux*, 68 Wn.2d 652, 414 P.2d 784 (1966), we hold this assignment of error to be without merit.

Appellant also assigns error to the trial court's denial of his motions[1] for a continuance. The trial date was set 55 days after the date of arrest in an apparent effort to accommodate the state, whose eyewitness, a seaman, was available only on that date and would not again be available for several months. Appellant contends that due process and the right to counsel include the right to be represented effectively, and that this means that counsel must be given sufficient time to prepare a defense.

■■ A motion for a continuance is addressed to the sound discretion of the trial court and appellant must show

---

[1]At the time of arraignment appellant moved for a continuance. This was followed by a formal written motion and by a renewal of that motion on the day of the trial.

abuse of that discretion. *State v. Bailey*, 71 Wn.2d 191, 426 P.2d 988 (1967); *State v. Schaffer*, 70 Wn.2d 124, 422 P.2d 285 (1966); *In re McNear v. Rhay*, 65 Wn.2d 530, 541, 398 P.2d 732 (1965). *See* 2 Orland, Wash. Prac., § 183 (2d ed. 1965); 17 Am. Jur. 2d *Continuance* §§ 27-28 (1964). In a criminal case it is true that, as appellant contends, constitutional issues are raised where it can be said that the denial of a continuance deprived the defendant of a fair trial. *See Avery v. Alabama*, 308 U.S. 444, 84 L. Ed. 377, 60 Sup. Ct. 321 (1940); *State v. Watson*, 69 Wn.2d 645, 419 P.2d 789 (1966); *Bradley v. State*, 227 Ind. 131, 84 N.E.2d 580 (1949); 21 Am. Jur. 2d *Criminal Law* § 320 (1965). These principles are well stated in *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 84 Sup. Ct. 841 (1964), where it is stated that:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process. . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

As the court went on to state in *Ungar*, there are no mechanical tests for deciding when a denial of a continuance is violative of due process, and the answer must be found in the circumstances present in the particular case. *Id.*

In the instant case appellant's present counsel represented him from the outset. When the trial court was considering appellant's renewed motion for a continuance on the day of the trial the following exchange occurred:

> THE COURT: Are there any witnesses who are key witnesses in this matter that you have not had an opportunity to talk to, Mr. Egger? MR. EGGER: No, Your Honor, there are not. They have all been made available to me to talk to if I wanted. I have not talked to Mrs. Perra, I believe her name is, for reasons of my own; certainly not for reasons of unavailability. THE COURT: All right. If during the course of the trial it develops there are any matters which by virtue of the shortness of the period of time between the plea and the trial date which leads you to believe you have not had an opportunity to fully

discuss the witness's testimony, the Court will grant you sufficient time to confer with that witness.

In addition with this offer of time to confer with witnesses, the trial court, when hearing appellant's motion for a new trial, inquired of appellant's counsel whether during the course of the trial "anything . . . developed wherein you can point to the fact that there was not sufficient time." Appellant's counsel answered no, and after some explanation he said "I can't say this would have changed the effect of the trial, . . . and I can't honestly say that the Court's denial of my request for a continuance actually prejudiced the defendant." Under these circumstances we cannot say that the trial court abused its discretion or that as the result of the denial of the motion for a continuance appellant was denied due process.

Appellant next assigns error to the admission of the testimony of Mrs. Perra regarding the statements[2] made by appellant during her visit with him in the jail. The visit by Mrs. Perra was subsequent to the admonition to appellant of his constitutional rights and was also subsequent to his retention of the services of an attorney. And, as noted above, the trial court, in holding the statements to be voluntary, found that Mrs. Perra was not acting as an instrumentality of the police but that she had sought the conversation with appellant for purposes of her own. Of course these findings do not obviate the necessity for further inquiry by this court into the circumstances surrounding the waiver by appellant of his constitutional rights. *State v. Davis,* 73 Wn.2d 271, 283, 438 P.2d 185 (1968); *State v. Kramer,* 72 Wn.2d 904, 910-11, 435 P.2d 970 (1968); *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964).

We have reviewed the record and are satisfied that the statements were voluntary. Indeed, appellant's testimony establishes that he was at all times free to discontinue the conversation and that same testimony indicates that

[2]For the purposes of this opinion we will treat these statements as a confession. See *State v. Hettrick,* 67 Wn.2d 211, 407 P.2d 150 (1965); *State v. Jones,* 65 Wn.2d 449, 397 P.2d 815 (1964).

appellant apparently disregarded his attorney's advice by talking to Mrs. Perra. Furthermore, the testimony of the police officers indicate that although the visit was not made during regular visiting hours, still there was nothing unusual about it. Finally, there is nothing in the record to indicate that there was any complicity between Mrs. Perra and the police officers. Hence appellant's contention that he was denied his rights under the fifth amendment of the federal constitution is without merit. *See Hoffa v. United States,* 385 U.S. 293, 300-304, 17 L. Ed. 2d 374, 87 Sup. Ct. 408 (1966).

Appellant further contends, however, that his rights under the fourth and sixth amendments to the federal constitution were abridged. As to the Fourth Amendment contentions, we also find no merit. *Hoffa v. United States, supra,* involved an informer who, for the purposes of that decision, was considered to have been in the employ of the government. The informer, Partin, apparently at Hoffa's invitation, accompanied Hoffa during a period when Hoffa was a defendant in a cause involving alleged violations of the Taft-Hartley Act. Partin's testimony as to conversations with him or in his presence was instrumental in convicting Hoffa in a subsequent jury tampering trial. On appeal the Supreme Court in affirming, answered arguments substantially the same as those raised in the instant case. The court, at 302, said:

> Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. . . .
>
> . . . In the words of the dissenting opinion in *Lopez* [*Lopez v. United States,* 373 U.S. 427, 83 Sup. Ct. 1381, 10 L. Ed. 2d 462], "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak."

Next appellant asserts that the visit by Mrs. Perra without his counsel present occurred after the information had

been filed and while he was in custody and that therefore his Sixth Amendment rights as enunciated in *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 Sup. Ct. 1199 (1964), were violated. In *Massiah* it was held that an accused's Sixth Amendment right to counsel was abridged where after indictment and after defense counsel had been retained, a secret government informer who was an alleged confederate of the accused surreptitiously obtained from him incriminating statements which were admitted into evidence. *Massiah* was an early attempt to deal with one of the many facets of judicial difficulties in the area of confessions and interrogations, which difficulties were, for the most part, ultimately dealt with in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966). We, therefore, deem it important that the court, in *Miranda, supra,* at 478, emphasized that:

> [W]e do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

We also think it is important to note that the Supreme Court, in *Massiah, supra,* at 207, expressly stated that the holding was limited to " . . . the circumstances here disclosed . . . ." Those circumstances repeatedly underscored in the Court's opinion, were that the government had deliberately and surreptitiously elicited incriminating statements from the accused.

This court has previously distinguished *Massiah, supra,* where the accused was aware that he was talking with an officer, *State v. Cole*, 67 Wn.2d 522, 408 P.2d 387 (1965), and, where contrary to his counsel's advice and absent any element of surreptitiousness or secrecy the accused volun-

tarily made a statement, *State v. Young,* 65 Wn.2d 938, 400 P.2d 374 (1965). *Cf. State v. Self,* 59 Wn.2d 62, 366 P.2d 193 (1961). We therefore find no difficulty distinguishing the instant case wherein there was not complicity whatsoever between the police and Mrs. Perra. *See Stowers v. United States,* 351 F.2d 301 (9th Cir. 1965). *See* also *United States v. Garcia,* 377 F.2d 321, 324 (2d Cir. 1967), *cert. denied,* 389 U.S. 991, 19 L. Ed. 2d 484, 88 Sup. Ct. 489 (1967). We agree with the court in *Paroutian v. United States,* 370 F.2d 631, 632 (2d Cir. 1967), *cert. denied,* 387 U.S. 943, 18 L. Ed. 2d 1331, 87 Sup. Ct. 2077 (1967), wherein it was stated that:

> It is clear that . . . [the witness] was not a government agent at the time that appellant made the incriminating statements to which . . . [the witness] testified and that appellant was not subjected to interrogation.

> We are certain that in deciding *Massiah,* the Supreme Court did not intend to hold that all those to whom indicted persons make admissions become *ipso facto* government agents and that nobody to whom defendants in criminal cases make incriminating statements can testify to those statements unless counsel was present when the statements were made.

> The basic purpose of the holding in *Massiah* was to prevent the government's interrogating persons under indictment who had already retained counsel, in the absence of their counsel. The requirement of the presence of counsel whenever indicted persons talk indiscreetly to third parties could not have been the Court's mind and would not contribute to the accomplishment of its purpose.

Appellant next assigns error to the trial court's refusal to give his proposed instruction on circumstantial evidence. The trial court did instruct the jury as follows:

> I instruct you that evidence may be of two kinds, direct or circumstantial. Direct evidence relates directly to factual questions and is produced by witnesses testifying directly from their personal observation. Circumstantial evidence relates to facts and circumstances from which the jury may infer other or connected facts which

usually and reasonably follow according to the common experience of mankind.

Circumstantial evidence may be properly considered by the jury. Its value and weight are to be determined from its character and nature and from its relation to all of the other facts which the jury finds to be otherwise established by the other evidence in the case.

If, upon consideration of the whole case, you are satisfied beyond a reasonable doubt of the guilt of any defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial and direct evidence in the amount of proof required for conviction.

Appellant's proposed instruction was identical to the above instruction except that it contained one additional paragraph which reads as follows:

"The facts and circumstances relied upon should be consistent with each other, and with the guilt of the defendant. They should be inconsistent with any reasonable theory of innocence."

Appellant argues that his proposed instruction is a correct statement of the law and he cites to us the case of *State v. Lynn,* 73 Wn.2d 117, 436 P.2d 463 (1968). There can be no doubt that in the proper case it would be reversible error to refuse to instruct on the so-called "hypothesis of innocence" doctrine. *State v. Douglas,* 71 Wn.2d 303, 428 P.2d 535 (1967). On the other hand it is not error to refuse such an instruction where it is not a circumstantial evidence case. *State v. Studebaker,* 67 Wn.2d 980, 410 P.2d 913 (1966). In the instant case, as in *Studebaker,* the evidence was such that it was not error to refuse the proposed instruction. It was not mere inferences or circumstantial evidence relied upon by the state for in addition to the testimony of Mrs. Perra, there were several eyewitnesses present at the scene of the shooting. *See Douglas, supra,* at 300.

Appellant's next assignment of error challenges the trial court's instruction No. 4, which reads as follows:

## No. 4

To convict the defendant, Amado Guerra Cadena, of the crime of Murder in the Second Degree, as charged in the information herein, the state must prove to you beyond a reasonable doubt:

(1) That on or about the 1st day of March, 1967, the defendant did mortally wound one Robert Ronald Perra, a human being, by shooting at, toward and into the body of the said Robert Ronald Perra with a certain weapon, to-wit: a pistol;

(2) That the defendant did inflict said mortal wounds

    (a) with design to effect the death of the said Robert Ronald Perra,

### Or

    (b) while engaged in the commission of a felony, to-wit: Assault in the Second Degree;

(3) That as a result of said wounds so inflicted the said Robert Ronald Perra then and there died;

(4) That said acts occurred in King County, Washington.

If you find from all the evidence admitted in this case that the state has proved beyond a reasonable doubt elements (1), (3), (4), and either (2) (a) or (2) (b) of the crime charged, then it will be your duty to return a verdict of guilty of Murder in the Second Degree. You are instructed that subheadings (a) and (b) are alternatives and only one need be proved.

If, on the other hand, you have a reasonable doubt as to the establishment of any one of the required elements, then you should find the defendant not guilty of Murder in the Second Degree.

Appellant contends[3] that this instruction allows the state to proceed against a defendant on two different theories; (a) that the homicide occurred during the commission of a felony, (b) that the defendant inflicted the wounds with design to effect the death of Perra. This is improper, argues appellant, and the state should be made to elect, for the way this matter was presented to the jury half of them

---

[3]Nowhere is it suggested that the state of the evidence would not have justified an instruction on either or both of these alternative theories.

could have found appellant guilty on one theory and half on the other. We do not agree.

■ The instruction in question is an almost verbatim recital of the second degree murder statute. RCW 9.48.040. The trial court underscored the word "or" in the instruction. The jurors were admonished that (2) (a) and (2) (b) were to be treated as alternatives. In another instruction the jurors were instructed as to the necessity for unanimity. The jury could not have been confused in this regard.

■ Insofar as appellant suggests that the state should have been required to elect between these alternatives, we again cannot agree. The statute spells out different means by which the crime is committed, and the state, under these circumstances and within the bounds of the evidence adduced, is entitled to an instruction on these alternatives. *See State v. Pettit*, 74 Wash. 510, 520, 133 Pac. 1014 (1913).

Appellant himself filed a supplemental brief with this court. For the most part his arguments parallel those of his counsel. He does make one additional contention not raised by his counsel which merits some discussion. During the trial Mrs. Perra made some reference in her testimony as to appellant's statement to her concerning his use of dexedrine on the day of the shooting. It is contended that this testimony prejudiced appellant in the minds of the jurors.

We note that appellant's counsel used this bit of testimony in closing argument to the jury. In essence the jury was told that this was further evidence (in addition to intoxication) that, in counsel's words, " . . . we have a man here who has lost touch with reality." This then was simply a matter of trial tactics by which appellant is bound.

We have carefully considered the remaining assignments of error raised in appellant's supplemental brief and in the brief of his counsel and find them to be without merit.

Affirmed.

FINLEY, C. J., HILL, HAMILTON, and NEILL, JJ., concur.