[No. 742-41391-1.    Division One—Panel 1.    March 22, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY L. MAYNER, *Appellant*.

R. *Michael Stocking,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Byron H. Ward, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant, after trial by jury, was convicted of murder in the first degree but without death penalty. He appeals. The agreed statement of facts may be briefly summarized.

Jeffery Huggard, a 16-year-old Glacier High School student, was last seen alive on December 1, 1968. That evening he had been the sole attendant of a south Seattle service station. When Jeffery failed to return home his parents went to the station and found it open and unattended. When the owner and police were summoned, it was discovered that several hundred dollars in cash was missing.

It was not until mid-February of 1969 that anything further was discovered concerning Jeffery's disappearance. At that time the defendant, Gary L. Mayner, made a number of incriminating statements to friends and relatives. The most detailed of such statements was made to appellant's brother-in-law, Albert Lively, on February 19, 1969. At trial Lively testified that the defendant admitted that he

had robbed the service station and that he had taken Jeffery some distance away and there had shot him in "cold blood." That same night Lively took Mayner to the Burien precinct of the King County Sheriff's office where the defendant admitted to doing the service station job. The appellant was not charged at that time since the police had not found the deceased's body.

On March 30, 1969, Jeffery Huggard's body was found in a wooded area some 35 miles from the service station. From the position of the body, the lack of dirt about its clothing and a grease rag still protruding from the rear pocket, it was indicated that the deceased had been killed at the spot where the body was discovered. After the body was discovered, a warrant was issued for defendant's arrest and on June 15, 1969, the defendant surrendered himself.

At trial the defendant testified that he was intoxicated at the time the incriminating statements were made and that he did not remember anything with respect to that period of time. Other witnesses, however, testified that although he had been drinking he was in control of his faculties at that time. The defendant denied having anything to do with the robbery or with Jeffery's death.

Defendant first contends that the court erred in failing to instruct the jury on the second-degree felony-murder rule and thereby made inevitable a conviction of first-degree murder. Under the felony-murder rule (RCW 9.48.030(2) and 9.48.040(2)), a defendant committing a homicide while committing or attempting to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree, commits first-degree murder. If, however, the homicide is committed in the course of committing, attempting to commit or withdrawing from the scene of any other felony, such as assault (RCW 9.11.020) or kidnapping (RCW 9.52.010), the homicide constitutes second-degree murder. Defendant argues that the court failed to instruct either on assault or kidnapping—only robbery being defined—and accordingly the jury could only conclude that crimes other than robbery were not at

issue; and that consequently the homicide was committed in withdrawing from the scene of the robbery (automatically first-degree murder) rather than in the course of, or withdrawing from the scene of, a kidnapping or assault (second-degree murder).

■ The point now made was not made below, nor did defendant request any instruction on the second-degree felony-murder rule.[1] What is here involved is·a case of nondirection, not misdirection. The instructions given were correct insofar as they went. A court is not required to instruct on a lesser degree of crime, nor in a more detailed fashion, in the absence of a request therefor. *State v. Parsons,* 44 Wash. 299, 87 P. 349 (1906). *See also State v. Missmer,* 72 Wn.2d 1022, 435 P.2d 638 (1967); *State v. Nettleton,* 65 Wn.2d 878, 400 P.2d 301 (1965); *Seattle v. Love,* 61 Wn.2d 113, 377 P.2d 255 (1962); *State v. Haynes,* 58 Wn.2d 716, 364 P.2d 935 (1961); *State v. Myers,* 53 Wn.2d 446, 334 P.2d 536 (1959). *See also State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966).

■ Defendant argues that the prejudice resulting to him from the failure to instruct on the second-degree felony-murder rule was aggravated because of the failure of the court to define the concept of withdrawal. The court rejected defendant's proposed instruction on withdrawal because erroneous. No error having been assigned to the action of the trial court, we must assume that the rejection was proper. A request for an instruction which is in part erroneous is no request at all. *State v. Richard,* 4 Wn. App. 415, 482 P.2d 343 (1971); *State v. Lutes,* 38 Wn.2d 475, 230 P.2d 786 (1951). The case presented is one of nondirection, not misdirection; in the absence of a proper request, nondirection is not error here. *State v. Parsons, supra; State v. Missmer, supra; Seattle v. Love, supra.* Having held the first claim of error not reviewable, we must hold it does not become reviewable because of claimed aggravation

---

[1] The trial court gave a proper instruction on second-degree murder, but not on the second-degree felony-murder rule.

of the asserted error caused by a failure, to which no error has been assigned, to give a requested instruction.

Defendant next contends that the court erred in not requiring the jury to be unanimous in its determination of the mode by which the defendant committed murder in the first degree. Instruction 3[2] set forth four elements which the jury was required to find in order to convict the defendant of first-degree murder. The second element set forth two alternative modes of the crime as follows:

(2)  That the defendant did inflict said mortal wounds
    (a)  with a premeditated design to effect the death of the said Jeffery Huggard,
    OR
    (b)  while in the commission of, or in an attempt to commit, or in withdrawing from the scene of a robbery; . . .

Included in instruction 21 was the statement "This being a

---

[2]"To convict the defendant Gary Lannas Mayner of the crime of murder in the first degree, as charged in the information, the state must prove to you beyond a reasonable doubt the following:

"(1) That on or about the 1st day of December 1968 the defendant did mortally wound one Jeffery Huggard by shooting at, toward and into the body of the said Jeffery Huggard with a gun;

"(2) That the defendant did inflict said mortal wounds
    "(a) with a premeditated design to effect the death of the said Jeffery Huggard,
    "OR
    "(b) while in the commission of, or in an attempt to commit, or in withdrawing from the scene of a robbery;

"(3) That as a result of the said wound so inflicted the said Jeffery Huggard then and there died;

"(4) That said acts occurred in King County, Washington.

"If you find from all the evidence admitted in the case that the state has proved beyond a reasonable doubt elements (1), (3), (4) and either (2a) or (2b) of the crime charged in information, then it will be your duty to return a verdict of guilty of murder in the first degree as charged. In connection therewith you are instructed that subheadings (2a) and (2b) are alternatives and only one need be proved.

"On the other hand, if after weighing all the evidence you then entertain a reasonable doubt as to the establishment of any one of the foregoing elements, then it will be your duty to return a verdict of not guilty of murder in the first degree as charged."

criminal case, it will require your entire number of twelve to return a verdict."

■ Defendant contends that instructions 3 and 21 failed to make it clear that the same mode of committing a crime must be found by all 12 jurors before a guilty verdict can be returned. As stated in *State v. Golladay*, 78 Wn.2d 121, 137, 470 P.2d 191 (1970), involving a charge of first-degree murder:

> Moreover, the instructions must clearly distinguish the alternative theories and require the necessity for a unanimous verdict on either of the alternatives.

*State v. Golladay, supra*, approved the instructions given in *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968), and *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968), concerning the necessity of a unanimous verdict on alternative modes of committing the crime charged. *State v. Cadena, supra*, a second-degree murder case, contained instructions identical with those involved in the instant case except for the fact that the instant case involves a charge of first-degree murder. *State v. Parmenter, supra*, a manslaughter case, contained the following instruction not given in *State v. Cadena:*

> I expressly point out that before you can return a verdict of guilty, all twelve of you must agree that element (1)(a) has been proved, or that all twelve of you must agree that element (1)(b) has been proved, or both.

*State v. Parmenter*, 74 Wn.2d n.1, at 354.

In *Golladay* there was no instruction on unanimity similar to the one in *Parmenter*, but rather, the instructions on that point were much like the ones in the instant case. However, the court neither expressly approved nor disapproved them. The statement concerning unanimity was made, and *Cadena* and *Parmenter* were discussed, in connection with analyzing whether it is permissible to give an instruction setting forth alternative modes of a crime where there was not substantial evidence to support one of them—the point on which the court reversed the conviction. Consequently, *Golladay* should not be read as being in

conflict with *Cadena*, but rather, as reaffirming the rule set forth in *Cadena* that the jury must be instructed on the unanimity requirement; and that this is done with sufficient clarity when the modes in which the crime can be committed are clearly set forth in alternative fashion and the jury instructed that they must be unanimous in their verdict. *State v. Cadena, supra*, at 196. Therefore, while a clarifying instruction such as that given in *Parmenter* would be desirable, its absence is not fatal. *See also State v. Bailey*, 4 Wn. App. 450, 481 P.2d 565 (1971). In light of *State v. Golladay, supra*, and *State v. Cadena, supra*, we cannot say that instructions 3 and 21 were so far deficient as to permit review of the error now claimed for the first time on appeal under the constitutional error rule, in this case denial of the right of trial by jury. Const. art. 1, §§ 21, 22 (amendment 10); *State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968). If, therefore, the defendant was dissatisfied with the clarity of the instruction, it was his duty to request a clarifying instruction in order to permit appellate review on this point. *State v. Richard, supra*. Here also what is presented is not a case of misdirection but a case of nondirection, and nondirection, as already pointed out, does not constitute reversible error. *State v. Myers, supra; State v. Parsons, supra; State v. Missmer, supra.*

Defendant finally contends that the court erred in refusing to give defendant's proposed instruction 21 embodying the presumption of second-degree murder.[3] It included a reference to manslaughter, which was not involved because there was no evidence of unintentional killing, and defendant conceded below that it should not have been included. *State v. Snider*, 70 Wn.2d 326, 422 P.2d 816

---

[3]"When the killing of one human being by another is proven beyond a reasonable doubt, the law presumes that such killing constitutes Murder in the Second Degree. If the State would elevate it to Murder in the First Degree, it must prove beyond a reasonable doubt that such killing occurred during the course, or in withdrawing from the scene, of the robbery. If the defendant would reduce it to Manslaughter, he has the burden of creating a reasonable doubt as to the element of intent to kill."

(1967); *State v. Hiatt,* 187 Wash. 226, 60 P.2d 71 (1936); *State v. Richard, supra.*

██ In any case, we find no prejudice from the failure to give the instruction. It is true that when a homicide is committed there is a presumption that it constitutes second-degree murder. *State v. Mays,* 65 Wn.2d 58, 395 P.2d 758 (1964). It is proper to instruct the jury on this presumption. The record in *State v. Golladay, supra,* shows that such an instruction was given in that case. This presumption, however, is not a presumption of fact to be weighed by the jury. *State v. Mays, supra.* It is intended to make clear that the burden of proving first-degree murder is upon the state; and if manslaughter is an issue, that the burden of justifying his act or proving manslaughter is upon the defendant. *State v. Sill,* 47 Wn.2d 647, 289 P.2d 720 (1955). In the instant case we are not concerned with the defense of justification or with manslaughter. The court's instructions in the instant case made it very clear that the state had the burden of proving murder in the first degree beyond a reasonable doubt; that if the jury should have a reasonable doubt as to whether murder in the first or second degree was committed, it was the jury's duty to find the defendant guilty of murder in the second degree. The purpose of the presumption was therefore accomplished. Furthermore, the jury having found the defendant guilty of murder in the first degree, error in instructions concerning murder in the second degree, especially nondirection, was harmless. It cannot be reasonably said in the instant case that the defendant was deprived of a fair trial thereby. *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963); *State v. Stratton,* 170 Wash. 666, 17 P.2d 621 (1932). *See State v. Lew,* 26 Wn.2d 394, 174 P.2d 291 (1946). There is no claim, apart from the claims of error discussed, that defendant was deprived of a fair trial. *See State v. Louie, supra.*

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

Petition for rehearing denied July 19, 1971.

Review denied by Supreme Court August 26, 1971.