[No. 1920-1. Division One. September 17, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN VINCENT
CAROTHERS, *Appellant.*

*Judith S. Dubester,* for appellant (appointed counsel for
appeal).

*S. Brooke Taylor, Prosecuting Attorney,* for respondent.

JAMES, J.—At jury trial in King County, defendant John V. Carothers was convicted of two counts charging murder in the first degree and one count charging robbery.[1] At trial he was represented by retained counsel who withdrew after denial of Carothers' motion for arrest of judgment or for a new trial.

The facts relevant to the issues raised by Carothers' appeal are: A retired Port Angeles businessman and his wife were shot and killed in their home near Sequim, Washington. There were no witnesses other than the participants in the crime. Some 6 weeks later, one Joseph Lalak was involved in an automobile accident in Bellingham. He was arrested and charged with carrying a concealed weapon. The weapon, a .357 magnum revolver, had belonged to the deceased husband.

After being granted immunity by a special inquiry judge, Lalak testified that he and Carothers planned to burglarize a house. They drove the back roads of Port Angeles and Sequim "looking for a place to rob," and Carothers entered the victims' house alone. Lalak heard three shots and entered the house after Carothers beckoned to him. He was shocked upon seeing the husband lying in a pool of blood. As Lalak entered the house he observed that Carothers was loading a .357 magnum revolver which he then handed to Lalak, telling Lalak to keep watch out the window. Carothers then took the wife into a bedroom and Lalak heard another shot. Carothers returned to the room where Lalak waited and Lalak observed that Carothers was carrying a man's wallet which he put into his pocket. As they left the house, Carothers turned and fired another shot at the man.

Carothers' defense was a categorical denial of participation and an alibi.

Although the state's case against Carothers was principally based upon Lalak's testimony, there was other sub-

---

[1]Trial was held in King County pursuant to the grant of Carothers' motion to change venue from Clallam County.

stantial corroborative evidence, both physical and circumstantial.

Carothers' appointed counsel on appeal first claims that the trial judge erred in giving an instruction based upon RCW 9.01.030, which advised the jury that every person who aids and abets in the "perpetration of a crime is guilty of the commission of the crime and shall be proceeded against and punished as a principal." Instruction No. 8. The objection at trial and claim on appeal is that there is no evidence to support a finding that Carothers participated as an aider or abettor in the perpetration of the three crimes charged.

It is true that if Lalak is to be believed in all respects, Carothers acted only as a principal and could not have participated as an aider and abettor. But judging the credibility of a witness is not an "all or nothing at all" function. Reasonable inferences could be drawn from Lalak's testimony and other evidence which would permit a finding that Lalak participated as a principal and that Carothers aided and abetted him. The giving of the aiding and abetting instruction was warranted by the evidence.

■ Appellate counsel's principal claim of error is that the instructions failed to admonish the jury that before Carothers could be found guilty on any count, there must be unanimous agreement as to the "mode" of committing the crime charged. Concerning the murder counts, the jury was instructed that Carothers could be found guilty if he killed either "with a premeditated design" or "while engaged in the commission of a robbery." Instructions Nos. 4 and 5.

Carothers' trial counsel took no exception, either to the absence of a specific instruction requiring unanimity as to the alternate modes of commission or to the absence of a general instruction requiring unanimous verdicts. While such failure would ordinarily preclude appellate review, *State v. Robinson,* 78 Wn.2d 479, 475 P.2d 560 (1970), it is clear that a failure to require a unanimous guilty verdict violates a fundamental constitutional right, *State v. Badda,*

63 Wn.2d 176, 385 P.2d 859 (1963), and we therefore consider the claimed error as to the unanimity requirement, though first asserted on appeal. *State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

■ Where, by statutory definition, a single crime may be committed in different ways or by different means, an indictment or information may charge alternatively, in one count, the several modes if they are not repugnant to each other, *i.e.*, if the proof of one mode does not necessarily disprove another mode. *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968).

■■ But it is the rule in Washington that before an accused may be found guilty of the commission of a crime alternatively charged, the jury must unanimously agree as to a single mode, even though the various modes are not repugnant. *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970).[2] However, as we pointed out in *State v. Mayner*, 4

---

[2] The rule in Washington seems to have its genesis in *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970). *Golladay* cites *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968), and *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968) as precedent for the statement that in a case where, as here, a single charge of murder is based upon alternative modes, *i.e.*, premeditated design or while engaged in a felony, "the instructions must clearly distinguish the alternative theories and require the necessity for a unanimous verdict on either of the alternatives." *State v. Golladay*, *supra* at 137. In both *Cadena* and *Parmenter*, the court responded to the appellant's claim that the record did not establish that the jurors were unanimous as to mode by pointing out that the jurors were, in fact, so instructed and that there was no basis for assuming that the jurors did not follow the instructions. *State v. Cadena*, *supra* at 196, and *State v. Parmenter*, *supra* at 354. In neither *Cadena* nor *Parmenter*, however, was the necessity for unanimity as to mode questioned and neither opinion cites any authority to support the conclusion that unanimity as to mode is required.

We suggest that unanimity as to mode of commission of a single crime should not be required if (1) the modes charged are not repugnant, and (2) substantial evidence concerning each mode is submitted to the jury.

Evidence that Carothers premeditated the killing does not disprove that he killed while engaged in the commission of a robbery. Evidence that he killed while committing the robbery does not disprove that he premeditated the killing, and substantial evidence supports either or

Wn. App. 549, 483 P.2d 151 (1971), the Washington Supreme Court has held that while an instruction as to unanimity as to mode is desirable, its absence is not fatal if it is clear that, in fact, the jury was unanimous as to mode. In *State v. Mickens*, 61 Wn.2d 83, 87, 377 P.2d 240 (1962), it was held that:

[S]ince the jury was polled, there is no doubt that the verdict *was* unanimous and *was* the result of each juror's individual determination.

(Italics in original.)

In *State v. Badda, supra* at 183, the ruling of *Mickens* was approved with the caveat that the appellate court "must be certain that the verdict is unanimous." In *Badda*, it was held that the poll of the jury did not cure the failure to instruct as to unanimity because the case involved "multiple defendants, multiple counts and special verdicts" and the court could not with confidence "be certain that the verdict [was] unanimous." *State v. Badda, supra* at 182-83.

Here, the jury rendered separate guilty verdicts as to each of the three counts and two special verdicts, finding that Carothers was armed with a deadly weapon, and rejecting the death penalty. The clerk's minute entry indicates that when polled, all jurors responded that all verdicts were unanimous. Significantly, the count charging robbery did *not* include alternative modes as did the murder count. It follows then that even though *some* of the

---

both findings.

The Court of Appeals of Oregon reasons similarly in *State v. Hazelett*, 8 Ore. App. 44, 49, 492 P.2d 501 (1972):

[W]here the single crime of first degree murder is charged, guilt may be established under either the felony murder theory or premeditated murder theory and it is immaterial that some members of the jury may have believed him guilty of premeditated murder while others may have believed him guilty of felony murder.

As pointed out in *Hazelett,* this is the rule in other jurisdictions which have considered the question. *See People v. Chavez,* 37 Cal. 2d 656, 234 P.2d 632, 641 (1951); *State v. Souhrada,* 122 Mont. 377, 204 P.2d 792, 796 (1949); *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989, 990, 63 L.R.A. 353, 93 Am. St. Rep. 582 (1903); *State v. Flathers,* 57 S.D. 320, 232 N.W. 51, 52, 72 A.L.R. 150 (1930); 40 Am. Jur. 2d *Homicide* § 495 (1968); Annot., 72 A.L.R. 154 (1931).

jurors may have found as a fact that the killings were the product of "premeditated design," *all* jurors necessarily found as a fact that the killings occurred while Carothers was "engaged in the commission of a robbery." Instructions Nos. 4 and 5. The robbery verdict thus had the effect of a special interrogatory which established unanimity as to felony murder. As required by *Badda,* we can therefore be certain that the verdicts on the murder counts were unanimous as to mode.

But appellate counsel further argues that under the instructions, "aiding and abetting" became a third possible "mode" of committing each murder and a second possible "mode" of committing the robbery and that, under the ruling of *Badda,* the polling of the jury did not assure that all the verdicts were indeed unanimous.

■ At common law "one charged as a principal only [could *not*] be convicted as an accessory or accomplice, and one charged as an accessory before the fact [could *not*] be convicted as a principal offender." (Footnotes omitted.) 4 R. Anderson, *Wharton's Criminal Law & Procedure* § 1789 (1957). But Washington, in common with most jurisdictions, early abolished the rule of common law by the enactment in 1881 of the precursor of RCW 9.01.030. The specification of the ways or modes by which a given crime may be committed is a legislative function. By RCW 9.01.030, the legislature specified that for *any* crime, "aiding or abetting" is not a separate way or mode of commission:

> Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, *is* a principal, and shall be proceeded against and punished as such.

(Italics ours.)

As pointed out in *State v. Cooper,* 26 Wn.2d 405, 174 P.2d 545 (1946), where, as here, the defendant was charged only

as a principal and where, as here, there was substantial evidence to support a finding that in fact the defendant participated as an aider or abettor, the effect of the statute is to permit a conviction "if the evidence is sufficient to satisfy the jury upon either theory." *State v. Cooper, supra* at 412. Aiding or abetting is not a separate mode or "alternative theory" as the term is used in *Golladay*. By the express terms of RCW 9.01.030, it matters not if some jurors may have believed that Carothers fired the gun and others that his only role was in aid of Lalak so long as all twelve agreed that he did participate.

Appellate counsel's final claim of error concerns instruction No. 16 which cautioned the jury that the testimony of an accomplice "on behalf of the state" should be acted upon "with great care and caution" and be subjected to careful examination in the light of other evidence in the case. The instruction further admonished the jurors that they "should not convict upon such testimony alone unless, after a careful examination of it, you are satisfied beyond all reasonable doubt of its truth."

Trial counsel for Carothers requested an instruction to the same effect but which included the words "an accomplice or one who claims to be an accomplice," but which did not limit its application to a witness who gave testimony "on behalf of the state." Appellate counsel's argument is that the court's instruction told the jury to regard Lalak's testimony with caution only if they first found that he was, in fact, Carothers' accomplice. But, counsel argues, Carothers' defense was that he had nothing to do with the crimes. The "warning," counsel argues, "took effect only after the jury found a fact in direct opposition to the defendant's claim that he was not involved."

Lalak testified "on behalf of the state." He was the only witness to whom the instruction could possibly refer. Carothers' proposed instruction was not so limited. The jury could not have read the court's instruction to mean anything other than that they were to view Lalak's testimony with skepticism.

We recognize that similar accomplice instructions have been expressly approved in Washington; but we are of the opinion that they are a comment upon witness credibility and as such are constitutionally impermissible.

> The Committee recommends that no instruction be given on the "credibility of special categories of witnesses".

WPI 2.09, 6 Wash. Prac. 22 (1967). We believe that, as with the alibi instructions, accomplice instructions should be phased out of Washington's criminal practice. *See State v. Adams*, 81 Wn.2d 468, 503 P.2d 111 (1972); 5 Wn. App. 366, 487 P.2d 218 (1971). In any event, the instruction questioned the credibility of a witness for the state and Carothers was in no way prejudiced.

Carothers has filed a pro se brief in which he asserts a number of claimed errors in addition to those argued by counsel on appeal.

Carothers devotes a substantial portion of his brief to an attack upon the credibility of Lalak. Judgment of the credibility of witnesses is the exclusive function of the jury, and the jurors were so instructed. We find no error.

Carothers further complains of the admission of certain exhibits asserting that they had no bearing upon the issues in the case and that the prosecutor was guilty of misconduct in offering them. The record discloses that one of the questioned exhibits was not offered after Lalak failed to identify it. Trial counsel stated that he had no objection to the admission of the others. There was no error.

Carothers next assigns error to the testimony of the pathologist called by the state to give his opinion as to the cause of the deaths. The testimony was given without objection. We find no error.

Carothers asserts that the prosecutor's closing arguments were inflammatory and unfair. Our reading of the record satisfies us that this claimed error is without merit.

Finally, Carothers argues that he was denied a fair trial because one of the jurors failed to disclose in voir dire that she was being treated for a psychiatric condition. The rec-

ord discloses that with the approval of defense counsel, the juror was excused and an alternate juror was substituted. No error occurred.

Affirmed.

HOROWITZ, J., concurs with JAMES, J.

WILLIAMS, J. (concurring)—I concur in Judge James' opinion but do not subscribe to the suggestion concerning unanimity in footnote 2.

Petition for rehearing denied October 29, 1973.

Review granted by Supreme Court February 4, 1974.