[No. 45171. En Banc. May 25, 1978.]

*In the Matter of the Personal Restraint of*
LAWRENCE E. GEORGE, *Petitioner.*

*Allen Ressler* and *Richard Emery,* for petitioner.

*Slade Gorton, Attorney General,* and *William C. Collins, Assistant,* for respondent.

ROSELLINI, J.—The petitioner was convicted of first-degree murder in 1964 and was sentenced to life imprisonment. He escaped from a minimum security building at the state penitentiary in 1976. RCW 9.95.115 provides a mandatory minimum sentence of 20 years, less earned good time credit, for persons sentenced to life imprisonment. With good time credit, the petitioner would have been eligible for parole within a year and a half had he not escaped. He was recaptured in Idaho a few days after his escape and was returned to custody of the Department of Social and Health Services a month later. After his return he was notified by the superintendent that he would not be eligible

for parole before October 2, 1989, a date 20 years after his return to custody, minus allowable good time.

In this personal restraint petition, the petitioner seeks a declaration that RCW 9.95.115 does not require that a prisoner in his position be confined for 20 continuous and consecutive years before he is eligible for parole, or in the alternative, if it does so require, that the statute be declared unconstitutional.

This section was enacted in Laws of 1951, ch. 238, § 1, p. 756. We are told that until recently the Board of Prison Terms and Paroles did not read the act as requiring continuous confinement, unbroken by such events as escape. Once before the petitioner had escaped. Upon his recapture he had been punished, as authorized by RCW 9.31.090,[1] but he had not been forced to forfeit the time he had served on his mandatory sentence.

The petitioner maintains that the board's prior understanding of the act was correct and that its present interpretation is erroneous. The section reads in pertinent part:

> The board of prison terms and paroles is hereby granted authority to parole any person sentenced to the penitentiary or the reformatory, under a mandatory life sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time . . .

RCW 9.95.115.

■ Giving the words used their ordinary meaning, as it is our duty to do, we can find no ambiguity in this provision. The words "continuous" and "consecutive" in their common meaning clearly dictate that the period of confinement required under the act shall not be broken by any period of absence from the control of the custodian. While the petitioner was absent from the penitentiary, he was not confined therein, and it was the expressed legislative intent

---

[1] "Every person in custody, under sentence of imprisonment for any crime, who shall escape from custody, may be recaptured and imprisoned for a term equal to the unexpired portion of the original term." RCW 9.31.090. *See also* RCW 9.95.130.

that if a prisoner escaped the penitentiary or reformatory before the expiration of 20 years, his mandatory nonwaivable minimum term should be calculated from the date he was returned to the institution.

It is urged that the statute as thus construed denies the petitioner the equal protection of the laws. He points out that, under RCW 9.31.090, other escapees are not punished so harshly, and maintains that there is no difference between escapees serving life sentences for murder in the first degree and other prisoners that would justify the distinction. He cites cases holding that there must be a rational basis for a classification that is "underinclusive". We find no difficulty in perceiving the legislative purpose in imposing a stricter requirement of confinement upon persons serving mandatory life sentences than on persons serving lesser sentences.

It must be remembered that prior to this 1951 enactment, the board was given no discretion at all with respect to persons serving mandatory life sentences. No minimum sentence could be fixed by the board. Laws of 1947, ch. 92, § 2, p. 598. *Thorne v. Callahan,* 39 Wn.2d 43, 234 P.2d 517 (1951). The act is therefore alleviative; but the concern that the public be given all reasonable protection from persons disposed to commit crimes of such a grave nature undoubtedly persisted and motivated the legislature in requiring an extended minimum confinement to demonstrate the prisoner's reformation. It may well have had in mind also that the desperation of an escapee's condition is conducive to further crime, and that one who has already committed murder may find it expedient to do so again in the exigency of this situation. There is a significant difference between the petitioner's crime and those lesser crimes which are not subject to mandatory life imprisonment sentences. Equal protection does not require identity of treatment, if there is reasonable ground for a difference in policy. *State v. Persinger,* 62 Wn.2d 362, 382 P.2d 497 (1963). Such a ground is present here.

 The petitioner also suggests that the law is invalid because under it, all life sentence escapees are not treated the same. If a life sentence prisoner escapes early in his term, he will not have as much time to make up as one who escapes late in his term. While there are, of course, these differences in impact, they all depend upon the voluntary act of the prisoner. A statute is not rendered discriminatory by the fact that a person who is entitled to its benefits cuts himself off from such benefits by his voluntary act. *Weiss v. Bruno,* 82 Wn.2d 199, 509 P.2d 973 (1973). It must be remembered that parole is a matter of favor or privilege to which the legislature may attach such conditions as it sees fit. *Anderson v. Corall,* 263 U.S. 193, 68 L. Ed. 247, 44 S. Ct. 43 (1923); *Riggins v. Rhay,* 75 Wn.2d 271, 450 P.2d 806 (1969). Here, the legislature attached a condition precedent—that the prisoner sentenced to life should spend a minimum of 20 consecutive years in confinement (less earned good time) before he should become eligible for parole. The fact that prisoners who escape at different points during their 20–year minimum terms have correspondingly different periods of time to make up does not make discriminatory a law which, on its face, applies alike to all within the class which it covers.

██ It is next urged that the law is so harsh as to constitute cruel and unusual punishment. No case is cited in which a court has found that a denial of parole for a limited period of time (within the original sentence) constitutes cruel and unusual punishment. The petitioner treats the statute as though it were designed merely to punish escape, ignoring the fact that it deals exclusively with persons who are serving sentences of life imprisonment and who are for this reason considered exceptionally dangerous to society. The fact that other prisoners serving lesser sentences for lesser offenses may be treated more leniently if they escape, does not render this requirement of continuous confinement for a minimum period of time cruel and unusual punishment in the constitutional sense. We may grant that the provision is harsh, and it may be unnecessary to accomplish

the legislative purpose. The question of necessity, however, is one which lies within the legislative judgment. *State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 508 P.2d 149 (1973). Evidently the legislature found this measure necessary to protect the public and rehabilitate the offender. We keep in mind that in enacting the provision, the legislature was offering the life sentence prisoner a privilege which it had previously withheld and thus was dealing more gently with him.

The Maryland District Court, in *Woods v. Steiner,* 207 F. Supp. 945 (D. Md. 1962), was faced with a similar contention with respect to a law which provided that if an order of parole was revoked, the prisoner should serve the remainder of the sentence originally imposed without credit for time spent in the community under parole supervision. That court held that a penalty which did not extend the original sentence did not constitute cruel and unusual punishment. Analogous are cases holding that statutes which provide for increased penalties for subsequent offenses do not result in cruel or unusual punishment as long as the sentence is not disproportionate to the underlying offense. *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976); *People v. McDaniels,* 165 Cal. App. 2d 283, 331 P.2d 450 (1958).

Applying that principle to the matter at hand, it is apparent that the requirement that a person serving a life sentence should serve 20 consecutive years before becoming eligible for parole, cannot constitute cruel and unusual punishment, when concededly the total sentence (of which this 20 years is only a part) was not disproportionate to the underlying offense—that of murder in the first degree.

Finally, the petitioner suggests that the board was required to give him prior notice that it was abandoning the construction which it had placed upon RCW 9.95.115 in the past and adopting a new construction. He asserts that in deciding to escape, he relied upon the board to penalize him, if he was apprehended, in a manner less harsh than that required by the statute, as it had done when he escaped before and as it had done in other escape cases. He

does not contend that principles of estoppel apply, but relies upon a theory that the adoption of the new interpretation and its application to him deprived him of his liberty without due process of law. Basic to his contention is the theory that one who elects to do an act which he is forbidden by law to do, has a right to rely upon prior administrative interpretation of the penalties imposed by that law, even though the statute is clear and unambiguous on its face.

The only case cited which involved the rights of a person serving a sentence upon conviction of a crime is *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), wherein the Supreme Court held that before parole can be revoked, a parolee, whose "conditional liberty" is at stake, is entitled to notice and an informal hearing upon the question whether he has violated his parole conditions. That case did not involve a question of statutory interpretation and offers no support to the theory advanced by the petitioner.

Nor do the remaining authorities which the petitioner cites sustain his theory. Only one, *Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1971), was decided on constitutional grounds. That action was brought by candidates for public office, whose names the elections board had refused to place on the ballot because their signatures did not include their middle initials. The board had not given notice that it would impose this strict requirement, and the federal district court held that due process required such notice, fundamental liberties (freedom of speech, assembly and petition) being involved. The court further found that the board's interpretation was not required by the language of the statute involved and that its prior, less rigid interpretation had been reasonable.

In *Atchison, T. & S.F. Ry. v. United States,* 209 F. Supp. 35 (N.D. Ill. 1962), the court held invalid an Interstate Commerce Commission action by which it ascribed to the term "perishable property" a meaning which it had never been accorded before by either the agency or by Congress.

The court found that the expression, by legislative and administrative usage, had become a term of art and that there was no ambiguity in the statute. In *Securities & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 91 L. Ed. 1995, 67 S. Ct. 1575, 67 S. Ct. 1760 (1947), the Supreme Court upheld a new administrative policy which it found to be justified by the agency's experience and consistent with the statute which authorized it. In *State v. Davenport,* 61 Ariz. 355, 149 P.2d 360 (1944), the Arizona Supreme Court held that where a statute was ambiguous, doubts with respect to its meaning should be resolved in favor of the prior administrative construction upon which the public had justifiably relied.

The federal district court, in *Montana Power Co. v. Environmental Protection Agency,* 429 F. Supp. 683 (D. Mont. 1977), declared that the defendant agency was required to effect its policy changes, which were admittedly within its authority, by employment of the rule–making procedures prescribed by law, so that it could have the advantage of input from interested and affected parties. *National Retired Teachers Ass'n v. United States Postal Serv.,* 430 F. Supp. 141 (D.D.C. 1977), also involved the adoption of a regulation which was within the agency's statutory authority, and it was held that, under the circumstances of the case, the regulation was valid even though the procedures prescribed in the administrative procedures act had not been followed.

■■ We are committed to the principle that an administrative agency may not, by interpretation, amend or alter the statutes under which it functions. *State v. Rains,* 87 Wn.2d 626, 555 P.2d 1368 (1976); *Baker v. Morris,* 84 Wn.2d 804, 529 P.2d 1091 (1974). Implicit in all of the cases which the petitioner cites, dealing with the powers of administrative agencies, is a recognition of this basic principle. None of them gives effect to an administrative construction which is at odds with the empowering statute. The corollary of the principle is that a party cannot be

98

heard to say that he acted in reliance upon an administrative construction which was manifestly contrary to the express provisions of a statute.

Since we do not have before us a case involving promulgation of agency rules or regulations,[2] the petitioner's theory that he was entitled to notice before the board revised its interpretation of the statute cannot be sustained. We need not consider the interesting question whether, in any event, his decision to escape involved an interest which is protected by the requirements of due process.

The relief asked in the petition is denied.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied July 11, 1978.

---

[2]We should note here that the Board of Prison Terms and Paroles is expressly exempt from the requirements of the administrative procedures act under RCW 34.04.150.