[No. 14111–2–I.   Division One.   August 26, 1985.]

*In the Matter of the Personal Restraint of*
GARY L. MAYNER, *Petitioner.*

*Kim Dupuis* and *Terri Nettke* of *Snohomish County Public Defender Association,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Marc Barreca, Assistant,* for respondent.

WEBSTER, J.—Gary L. Mayner filed a personal restraint petition challenging RCW 9.95.115, and seeking a redetermination of the date when he will be eligible for parole. We find that the statute violates equal protection and grant the petition.

Mayner was convicted of first degree murder in King County on September 30, 1969. He was sentenced to life imprisonment on October 3, 1969, and received the mandatory minimum term of 20 years less earned good time. *State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151, *review denied,* 79 Wn.2d 1008 (1971). Mayner escaped from confinement in March 1981. He was apprehended in Oregon and returned to custody the following October.

Mayner later pleaded guilty to crimes he committed while at large, including attempted kidnapping, second degree theft, and second degree possession of stolen property. He was sentenced to prison on each charge.

RCW 9.95.115 (the restart statute) reads in part:

The board of prison terms and paroles is hereby granted authority to parole any person sentenced to the penitentiary or the reformatory, under a mandatory life

sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time . . .

Following a hearing, the Board of Prison Terms and Paroles decided that Mayner's mandatory minimum 20–year sentence less earned good time started over on October 6, 1981, because the escape interrupted the "continuous confinement" required by the restart statute. Mayner consequently was not credited for the 11 years 8 months he served before the escape.

Mayner challenges the Board's determination that his minimum mandatory sentence not be credited with time served, contending that the restart statute violates double jeopardy and equal protection, and that RCW 9.94A, the Sentencing Reform Act of 1981, gives the Board the authority to disregard the statute. Our disposition of the petition on equal protection grounds makes it unnecessary to reach the other issues raised in the petition.

The equal protection clause of the Fourteenth Amendment requires that "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978). Mayner argues that failure to give credit against the minimum mandatory sentence violates equal protection, citing *Reanier v. Smith,* 83 Wn.2d 342, 517 P.2d 949 (1974) and *In re Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983). The State responds that the restart statute precludes credit for time served before an escape and has previously been held not to violate equal protection. *In re George,* 90 Wn.2d 90, 579 P.2d 354 (1978).

The *George* court construed RCW 9.95.115, concluding that the statute was clear and unambiguous, and that any break in the period of confinement necessitated restarting the 20–year minimum term. *George,* at 92. The *George* court rejected the petitioner's equal protection challenge to the statute, finding a rational basis for classifying prisoners

into those serving life sentences and other prisoners:

[T]he concern that the public be given all reasonable protection from persons disposed to commit crimes of such a grave nature . . . motivated the legislature in requiring an extended minimum confinement to demonstrate the prisoner's reformation.

*George,* at 93.

The *George* court did not, however, consider the line of cases beginning with *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), holding that sentences imposed after conviction must be credited with all time spent in detention. Our Supreme Court, relying in part on *Pearce,* has held that credit must be given for time spent in jail before trial due to an inability to post bail. *Reanier v. Smith, supra.* The court stated:

Fundamental fairness and the avoidance of discrimination and possible multiple punishment dictate that an accused person, unable to or precluded from posting bail . . ., be credited . . . with all time served in detention prior to trial and sentence.

*Reanier,* at 346. Failure to give credit violates equal protection by differential treatment based on ability to post bail, and violates double jeopardy because there is a possibility that one incarcerated pending trial will serve a sentence longer than the maximum imposed if credit is not given. This analysis was later extended to require that all detention time be credited against a maximum sentence, *In re Phelan,* 97 Wn.2d 590, 647 P.2d 1026 (1982) (*Phelan* I), and against the minimum discretionary sentence, *In re Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983) (*Phelan* II).

The court held in *Phelan* II that denial of credit against the minimum discretionary term violates both equal protection and double jeopardy. The court reasoned that credit for time served involves physical liberty, a basic human right, requiring an intermediate level of scrutiny in the equal protection analysis. *Phelan* II, at 512. Under intermediate scrutiny, the challenged practice must further a substantial state interest. The *Phelan* II court found that

denial of credit was connected to only one state interest, punishment, and did not survive heightened scrutiny. *Phelan* II, at 514.

*George* did not consider the equal protection issue from the perspective of credit for time served, as did the *Reanier* court. Additionally, the *George* court applied the "rational relationship test" rather than intermediate scrutiny. Mayner thus presents a new question which cannot be solved by simple application of existing precedents. An equal protection analysis of the statute considering the right to credit for time served is necessary.

The first step in an equal protection analysis is identifying the challenged classifications. The restart statute creates two groups: those serving minimum mandatory terms on life sentences, and those serving minimum mandatory terms on all sentences less than life. The statute applies only to those serving life sentences, imposing on them an additional requirement of "20 years continuous confinement" in order to be eligible for parole.

Next, the appropriate equal protection test must be selected. There are three levels of equal protection analysis: the rational relationship test, intermediate scrutiny, and the strict scrutiny applied when a law creates a suspect classification or implicates a fundamental right. *Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). In *Phelan* II the court applied the intermediate scrutiny test because credit for time served affects the right of physical liberty, and "[p]hysical liberty, while not recognized as 'fundamental', is a basic human right". *Phelan* II, at 514. While there is no "right" to parole, a conditional liberty interest is implicated by the restart statute, making the intermediate scrutiny test appropriate. *In re Blair*, 38 Wn. App. 670, 673, 688 P.2d 532 (1984); *cf. Monohan v. Burdman*, 84 Wn.2d 922, 530 P.2d 334 (1975); *In re Sinka*, 92 Wn.2d 555, 599 P.2d 1275 (1979) (conditional liberty interest created by statutes and regulations directing the setting of minimum terms). Under intermediate scrutiny, the challenged law must be such as "may fairly

be viewed as furthering a substantial interest of the State." *Plyler v. Doe*, 457 U.S. 202, 217–18, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982); *see Phelan* II, at 513.

The final step is applying the appropriate level of scrutiny to the challenged legislation in light of the asserted state interest. The State did not allege a particular interest advanced by the restart statute. The *George* court, however, identified the state interest in RCW 9.95.115 as assuring that those convicted of serious crimes are rehabilitated before returning to society. *George*, at 93. In light of existing parole procedures, it is difficult to see how RCW 9.95.115 advances this interest. The Board makes an individualized determination on each prisoner's suitability for parole, considering the particular facts and circumstances involved.[1] The Board is thus free to consider Mayner's escape as a factor indicating that he is not rehabilitated and should not be returned to society. The Board may effectuate this decision by extending the minimum sentence beyond 20 years. The State's interest in assuring that dangerous criminals not be returned to society is better protected by this individual process than by a statute limiting the Board's discretion to consider eligibility for parole. The asserted interest is not furthered by the statute and does not justify the differential treatment of those serving minimum mandatory sentences on life sentences and all other prisoners serving minimum mandatory sentences. The statute violates equal protection and is therefore unconstitutional.

This ruling does not reverse Mayner's conviction, set a new release date for him, or inhibit the Board's decision-making process. We hold only that the Board may consider Mayner's eligibility for parole and that Mayner is entitled to credit for time served prior to his escape. This applies

---

[1]The Sentencing Reform Act of 1981, RCW 9.94A, drastically changes parole procedures and eliminates RCW 9.95.115. Prisoners given life sentences prior to the effective date of the act, however, continue to be governed under the law as it existed prior to the act.

only to the 11 years 8 months actually served. Mayner is not entitled to credit for "good time" accrued before the escape. As noted in *Phelan* II, "good time" credit is distinguishable from actual time served, as it is "focused more directly on the particular goal of rehabilitation" and "has significantly less of an impact on the prisoner's liberty interest." *Phelan* II, at 514–15.

The petition is granted and the Board is hereby directed to reconsider Mayner's mandatory minimum term, granting credit for time served prior to the escape.

RINGOLD and GROSSE, JJ., concur.

Reconsideration denied September 26, 1985.