[No. 15802–3–I. Division One. June 16, 1986.]

*In the Matter of the Personal Restraint of* LEYDELL BAKER, *Petitioner.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen Spong, Assistant,* for respondent.

JOHNSEN, J.*—Leydell Baker has filed a personal restraint petition (PRP) alleging that his due process rights have been violated because the Department of Corrections has refused to recommend him for parole absent his participation in the Mutual Agreement Program (MAP) even though he is beyond his good time release date. We dismiss the petition.

On November 4, 1971, Baker was convicted of the first degree murder of his father–in–law. By special verdict, the jury recommended the death penalty. However, pursuant to *State v. Baker,* 81 Wn.2d 281, 501 P.2d 284 (1972), the State was precluded from imposing the death penalty under the then–existing statute. On February 6, 1973, Baker was resentenced to life in prison.

It is undisputed that the Board of Prison Terms and Paroles (Parole Board) had the authority to grant Baker parole on October 20, 1984, after he had been continuously confined for 20 consecutive years less earned good time, if the superintendent of the prison certified that his conduct and work had been meritorious and, based thereon, recommended parole. However, Baker has refused to sign a MAP contract. The MAP is a program for prisoners serving life sentences who are approaching their parole eligibility. The inmate, his counselor, and the Department enter into an agreement that they will each take certain steps to gradually acclimate the inmate to increased freedom in order to successfully prepare him or her for eventual release into the community. Because Baker has refused to participate in the MAP, he has not been recommended for parole.

Baker filed a complaint in federal district court against

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

the director of the Department, alleging that its policy requiring life term inmates to participate in the MAP violates his due process and equal protection rights under U.S. Const. amend. 14. Both he and the Department moved for summary judgment. The court found that Baker had no constitutionally protected liberty interest in being paroled because there is no legitimate claim of entitlement to parole, as the applicable statutes are written in discretionary language. Therefore, his due process rights were not violated. The court also found that the MAP did not disadvantage a suspect classification and that the policy under the MAP was rationally related to a legitimate state objective. Therefore, his equal protection rights were not violated. The court denied Baker's motion for summary judgment and granted the Department's motion for partial summary judgment.

On December 24, 1984, Baker filed his PRP in this court. In order to obtain relief by means of a PRP, the petitioner must establish that, more likely than not, he or she was actually prejudiced by constitutional error. *In re Gunter*, 102 Wn.2d 769, 773–74, 689 P.2d 1074 (1984); *In re Hews*, 99 Wn.2d 80, 93, 660 P.2d 263 (1983).

In an order dated September 20, 1985, Baker's PRP was referred to a panel to determine whether the rule announced in *Monohan v. Burdman*, 84 Wn.2d 922, 530 P.2d 334 (1975) "should be applied to an inmate who is incarcerated beyond his mandatory minimum term less earned good time."

Petitioner in *Monohan* had been given a tentative parole release date. Actual release on that date was dependent on developing an acceptable parole rehabilitation plan. Petitioner was granted a furlough in his home community to develop a parole plan. While on furlough, he was arrested, charged with disorderly conduct and returned to prison. As a result of an interview with the petitioner, the prison's classification committee concluded that he was unsuitable for parole and recommended that the Parole Board reconsider its previous determination. Following a hearing, the

Parole Board canceled the petitioner's tentative release date and extended his minimum term. *Monohan,* at 923–24.

The court in *Monohan* observed that the initial fixing of a tentative parole release date is discretionary and does not involve due process. However,

> once parole or a promise of parole has been granted in the form of a tentative release date, . . . the prospective parolee enjoys a unique status and is deserving of minimal due process safeguards before cancellation of that date for reasons other than failure to develop an adequate rehabilitation plan.

*Monohan,* at 929. The court therefore referred the case back for further proceedings.

■■ The recent case of *In re Ayers,* 105 Wn.2d 161, 713 P.2d 88 (1986) is dispositive of Baker's claim. *Ayers* involved five prisoners whose personal restraint petitions were denied. The court stated:

> While there are some factual differences among petitioners, the common thread of the allegations are (1) a minimum term less than the maximum was set; (2) *one or more parolability hearings were held*; (3) *the petitioners were denied parole*; and (4) minimum terms were extended, in some cases, to the maximum.

(Italics ours.) *Ayers,* at 163. The court held that there is no protected liberty interest in the "potential of parole," and therefore, due process requirements do not apply. *Ayers,* at 164 (citing *Greenholtz v. Inmates,* 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979)). The court distinguished *Monohan* by emphasizing that there the Parole Board had in fact made a determination the petitioner was fit for parole, had ordered parole and established a specific release date. The court likened the situation in *Monohan* to a parole revocation proceeding (where due process requirements do apply per *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972)), rather than the determination of eligibility for parole. *Ayers,* at 166. *Ayers* precludes giving relief to Baker by means of a PRP because there is no constitutional error. There is no due process right to the prospect of parole.

*Ayers* concluded that, although it found no constitutional basis for a protected liberty interest, the cases would be returned to the Parole Board for written findings and conclusions in compliance with its own rules. That is not required here. There has been no parole hearing, and we find no requirement in either RCW 9.95 or WAC Title 381 requiring one if the Parole Board is convinced that before becoming eligible for parole, a prisoner completing a life sentence should participate in a structured plan preparing him for release into the community.[1]

We note that Baker should be precluded from raising the MAP issue under the doctrines of collateral estoppel and res judicata because the same cause of action has already been litigated in federal court and the issue decided against him. *Rains v. State,* 100 Wn.2d 660, 674 P.2d 165 (1983); *see In re Haverty,* 101 Wn.2d 498, 502–03, 681 P.2d 835 (1984) (precluding a petitioner from raising the same grounds for review as those raised in prior adjudications). Finally, *Monohan* expressly limited its holding to the situation where cancellation of a tentative release date was made for reasons *other* than the failure to develop an adequate parole rehabilitation plan. *In re LaLande,* 21 Wn. App. 378, 381, 585 P.2d 180 (1978). Baker's refusal to participate in the MAP is similar to the failure to develop a rehabilitation plan.

Baker also claims that the Parole Board has violated due process by failing to set a minimum term under RCW 9.95-.040. This argument is without merit. RCW 9.95.115 provides a mandatory minimum sentence of 20 years, less earned good time credits, for one convicted of first degree murder sentenced to life imprisonment. *In re George,* 90 Wn.2d 90, 91, 579 P.2d 354 (1978); *In re Mayner,* 41 Wn.

---

[1]In fact, RCW 9.95.100, found constitutional by the court in *Ayers,* provides in part: "The board shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release."

This provision illustrates that the Parole Board has considerable discretion in deciding whether to grant parole.

App. 598, 599, 705 P.2d 284 (1985).[2] We also find to be without merit Baker's claim that RCW 9.95.115 is violated by the Department's creation of a MAP requirement as a condition precedent to certification of readiness for parole. Both the Parole Board and the superintendent of the institution are given considerable discretion in deciding whether to grant parole. *Baker v. Morris*, 84 Wn.2d 804, 529 P.2d 1091 (1974), cited by Baker, is distinguishable. In that case, the Parole Board adopted a rule changing a provision explicitly set forth in RCW 9.95.040. Requiring Baker to sign a MAP contract does not change any statutory requirement.

The personal restraint petition is dismissed.

WILLIAMS and GROSSE, JJ., concur.

Reconsideration denied August 12, 1986.

---

[2] *In re Mayner, supra,* found RCW 9.95.115 unconstitutional as violative of equal protection. However, the Supreme Court has granted a motion for discretionary review, and thus the validity of the statute has not been finally determined. In any event, *Mayner* should have no effect on *Baker*, as it addressed the effect of the statute's requirement of continuous confinement for 20 consecutive years for parole eligibility on a prisoner who had escaped and been returned to custody. Under intermediate scrutiny, the court found that RCW 9.95.115 could not be fairly viewed as furthering a substantial interest of the State because of the Board's individualized determination of each prisoner's suitability for parole. *Mayner,* at 602–03. It is this discretion that Baker is challenging.