[No. 52167-1. En Banc. December 31, 1986.]

*In the Matter of the Personal Restraint of*
GARY L. MAYNER, *Respondent.*

*Kenneth O. Eikenberry, Attorney General, Kathleen D. Spong, Senior Assistant,* and *Michael P. Lynch, Marc Barreca,* and *Steven L. Abel, Assistants,* for petitioner.

*Kim Earl Dupuis* of *Snohomish County Public Defender Association,* for respondent.

GOODLOE, J.—The Court of Appeals, Division One, granted Gary L. Mayner's personal restraint petition challenging RCW 9.95.115 because it found that RCW 9.95.115 was unconstitutional as it violated the equal protection clause. *In re Mayner,* 41 Wn. App. 598, 705 P.2d 284 (1985). Washington State Board of Prison Terms and Paroles appeals. We reverse.

Mayner was convicted of first degree murder on Septem-

ber 30, 1969. He was sentenced to life imprisonment on October 3, 1969, and received a mandatory minimum term of 20 years less earned good time. *State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151, *review denied,* 79 Wn.2d 1008 (1971).

Pursuant to RCW 9.95.115, a person under a mandatory life sentence is required to be *continuously* confined for 20 *consecutive* years less good time before the Board has the authority to grant parole. Mayner's earliest possible release date under his original sentence would have been October 14, 1982, 13 years 4 months from the date he was arrested for murder.

In December 1980, Mayner was transferred to a work release program. In March 1981, Mayner failed to return to the work release facility. He was apprehended in October 1981 after having committed several crimes during his escape. Mayner later pleaded guilty to, was convicted of, and received prison sentences for first degree attempted kidnapping, second degree theft, and second degree possession of stolen property. Mayner also pleaded guilty to first degree escape. For this offense he received a suspended 10–year sentence.

Following a hearing in 1982, the Board determined that pursuant to RCW 9.95.115 Mayner was not entitled to credit his 20–year mandatory minimum sentence with the 11 years 8 months he had already served on the murder conviction prior to his escape. The Board determined that, until Mayner had been confined continuously for 20 years less good time, he would not become eligible for parole. Consequently, the Board restarted Mayner's mandatory minimum 20–year sentence less good time on October 6, 1981, the date of his rearrest. Mayner sought relief from the Board's decision by filing a personal restraint petition with the Court of Appeals, Division One.

The petition involved three challenges to RCW 9.95.115, but the Court of Appeals addressed only one. The Court of Appeals held that RCW 9.95.115 was unconstitutional because it violated equal protection. *In re Mayner, supra.*

We granted discretionary review. Because we hold RCW 9.95.115 does not violate equal protection, it is necessary also to address the other two challenges raised by Mayner.

We must first decide whether the Court of Appeals erred in finding that the restart statute, RCW 9.95.115, violated equal protection guaranties. RCW 9.95.115 reads, in part:

> The board of prison terms and paroles is hereby granted authority to parole any person sentenced to the penitentiary or the reformatory, under a mandatory life sentence, who has been *continuously* confined therein for a period of twenty consecutive years less earned good time . . .

(Italics ours.)

RCW 9.95.115 withstood an earlier equal protection challenge in *In re George,* 90 Wn.2d 90, 579 P.2d 354 (1978). The facts in *George* are similar to the facts here. In that case the petitioner was convicted of first degree murder and sentenced to life imprisonment. The petitioner was nearing his parole eligibility date when he escaped. Petitioner was caught and subsequently informed that pursuant to RCW 9.95.115 he would not become eligible for parole until 20 years after the date of his recapture less allowable good time.

In construing RCW 9.95.115 the *George* court stated the words "continuous" and "consecutive" are unambiguous and "clearly dictate that the period of confinement required under the act shall not be broken by any period of absence from the control of the custodian." *George,* at 92. "[I]t was the expressed legislative intent that if a prisoner escaped the penitentiary . . . before the expiration of 20 years, his mandatory nonwaivable minimum term should be calculated from the date he was returned to the institution." *George,* at 92–93.

The *George* court specifically rejected the equal protection challenge and argument made by petitioner that RCW 9.95.115 improperly treats escapees serving life sentences for murder in the first degree more harshly than other prison escapees.

We find no difficulty in perceiving the legislative purpose in imposing a stricter requirement of confinement upon persons serving mandatory life sentences than on persons serving lesser sentences.

. . . There is a significant difference between the petitioner's crime and those lesser crimes which are not subject to mandatory life imprisonment sentences. *Equal protection does not require identity of treatment, if there is reasonable ground for a difference in policy. Such a ground is present here.*

(Citations omitted. Italics ours.) *George,* at 93.

The *George* court upheld RCW 9.95.115 after applying the rational basis test, which is the minimal level of scrutiny applied in equal protection cases. Under the rational basis test a challenged law will be upheld "'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.'" *State v. Phelan,* 100 Wn.2d 508, 512, 671 P.2d 1212 (1983) *(Phelan* II); *see Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978).

Notwithstanding *George,* the Court of Appeals in this case invalidated RCW 9.95.115 on equal protection grounds. The Court of Appeals stated that the *George* court did not consider a line of cases which in combination hold that equal protection and double jeopardy principles require credit for presentence and post–sentence probationary jail time against (a) maximum sentences, (b) mandatory minimum sentences, and (c) minimum discretionary sentences. *In re Mayner,* at 601. *See Reanier v. Smith,* 83 Wn.2d 342, 517 P.2d 949 (1974); *In re Phelan,* 97 Wn.2d 590, 647 P.2d 1026 (1982) *(Phelan* I); *Phelan* II.

The Court of Appeals primarily relied on this court's holding in *Phelan* II to distinguish *George.* In *Phelan* II the court used an intermediate level of scrutiny to review a denial of credit for presentence jail time against discretionary minimum terms because the following interests were implicated: (1) "a deprivation of liberty in addition to that which would otherwise exist" and, (2) "a classification based solely on wealth" (persons unable to post bail

remained in jail while those with adequate security remained free pending trial). *Phelan* II, at 514. For a law to be held constitutional under the intermediate scrutiny test, it must be such as "'may fairly be viewed as furthering a substantial interest of the State'". *See Phelan* II, at 512 (quoting *Plyler v. Doe,* 457 U.S. 202, 217–18, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982)). The *Phelan* II court found the State's interest in rehabilitating criminals, the only interest proffered by the State, was insufficient to satisfy the intermediate test. *Phelan* II, at 514. Consequently, the *Phelan* II court determined that the equal protection doctrine requires that all presentence jail time be credited against minimum discretionary sentences.

In view of *Phelan* II, the Court of Appeals held that RCW 9.95.115 failed to meet the intermediate test, notwithstanding this court's previous application of the rational basis test in *George.* The State argues that the *George* analysis is still viable and that a rational basis test should be applied. The State further argues that under either the rational basis or intermediate test equal protection concerns are satisfied.

 We find the *Phelan* II equal protection analysis is inapplicable here because RCW 9.95.115 involves different interests. The *Phelan* II court, at page 514, determined that denial of credit for presentence jail time involved (1) "a deprivation of liberty in addition to that which would otherwise exist" and (2) "a classification based solely on wealth". In comparison, this case involves (1) "a conditional liberty interest", *In re Mayner,* 41 Wn. App. 598, 602, 705 P.2d 284 (1985), and (2) a class of persons sentenced to mandatory life terms who at a minimum must serve at least 20 consecutive years in prison less credit for good time (which precludes escape during this period).

A "conditional liberty interest" is fundamentally different from an interest involving "a deprivation of liberty in addition to that which would otherwise exist". The Board's application of RCW 9.95.115 which restarted Mayner's 20–year mandatory period does not add to his original liberty

deprivation. It is part of his original sentence. The Legislature has determined that persons convicted of first degree murder must serve 20 consecutive years less good time before they may become eligible for parole. RCW 9.95.115. Consequently, restarting Mayner's sentence does not deprive him of any liberty which would otherwise exist, since what would otherwise exist (had he not escaped) is the requirement that he serve 20 consecutive years. This remains Mayner's sentence after his escape.

Furthermore, the *Phelan* II court only applied the intermediate equal protection test when it analyzed credit for presentence jail time. It did not apply this test in its discussion of post–sentence probationary jail time. Since presentence jail time is not at issue in this case, *Phelan* II's equal protection analysis based partially on a wealth classification does not control issues concerning credit for post–sentence incarceration. Moreover, even if we found that *Phelan* II's equal protection analysis applies to credit for post–sentence probationary jail time, such analysis does not support Mayner's case. An inmate to whom RCW 9.95.115 applies is not in a position to seek credit for post–sentence probationary jail time given the requirement that the inmate serve 20 years consecutively.

This case also differs from *Phelan* II because RCW 9.95-.115 does not establish a classification based upon wealth. RCW 9.95.115 is directed to persons serving mandatory life sentences, some of whom may escape. This group is a patently different class from one consisting of all arrestees who may or may not have the means to post bond. Arrestees who cannot post bond are not fully accountable for their status, *Phelan* II, at 514, but convicts who voluntarily escape are clearly accountable for their actions. "A statute is not rendered discriminatory by the fact that a person who is entitled to its benefits cuts himself off from such benefits *by his voluntary act*." (Italics ours.) *George,* at 94.

Finally, whereas the State in *Phelan* II asserted that denial of presentence jail time furthered only one state interest, that of rehabilitation, the State in this case argues,

and the *George* court found, that RCW 9.95.115 furthers several state interests. RCW 9.95.115 (1) protects the public from dangerous offenders, (2) furthers rehabilitative goals, (3) deters escapes by mandatory life term prisoners who may have a heightened sense of desperation, and (4) decreases the chance for the commission of additional offenses. *See George,* at 93. We continue to find that the rational basis test is the proper standard of review and do not disturb our holding in *George.* The enumerated state objectives are more than adequate to validate RCW 9.95-.115 on equal protection grounds.

We find the *Phelan* II equal protection analysis is inapplicable here because RCW 9.95.115 involves different interests. Unlike *Phelan* II, this case involves neither a deprivation of liberty in addition to that which would otherwise exist nor a classification based partially on wealth. There are no grounds to use an intermediate scrutiny level; the rational basis test is properly applied. RCW 9.95.115 does not violate equal protection.

Since we do not feel that the intermediate equal protection test is appropriate to apply in this case, we do not reach the question of whether RCW 9.95.115 survives the heightened level of scrutiny the test requires. Nevertheless, we find merit in the State's argument that to adopt a stricter test than the rational basis test applied in *In re George,* 90 Wn.2d 90, 579 P.2d 354 (1978), would be imprudent. To adopt the Court of Appeals analysis and apply the intermediate test to the facts in this case would require the judiciary to impose heightened scrutiny to many legislative acts involving prisoners. This would lead to increased judicial review of legislative enactments which define crimes, set sentences, and of all actions adversely affecting an inmate's status. This court has already cautioned against such judicial activism in areas of legislative concern. *State v. Smith,* 93 Wn.2d 329, 337–39, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980).

The second issue we must address is whether application of RCW 9.95.115 constitutes double jeopardy. The Court of

Appeals did not reach this issue. Double jeopardy claims were not discussed in *George*. Consequently, the constitutionality of RCW 9.95.115 from a double jeopardy perspective has yet to be addressed by this court.

The double jeopardy clause of the constitution, U.S. Const. amend. 5, protects against a second prosecution for the same offense after acquittal or after conviction, and it "protects against multiple punishments for the same offense." (Footnote omitted.) *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). The *Phelan* II court found that the *Pearce* language requires credit for (a) presentence and (b) post–sentence probationary jail time against (1) maximum terms, (2) mandatory minimum terms, and (3) discretionary minimum terms. *Phelan* II, at 515.

Our holding in *Phelan* II does not support Mayner's argument that RCW 9.95.115 violates double jeopardy. Presentence jail time is not at issue here. Post–sentence probationary jail time is also not at issue since Mayner did not serve (and can never serve prior to satisfaction of the RCW 9.95.115 requirement) such time in jail given his mandatory life sentence. Even assuming arguendo that Mayner's post–sentence prison time is analogous to post–sentence *probationary* jail time, double jeopardy principles do not support the result urged by Mayner. First, application of the restart statute does not extend Mayner's maximum term since his term is life imprisonment. Second, the restart effects of RCW 9.95.115 do not extend Mayner's *mandatory minimum* term since the Legislature has determined that convicted first degree murderers must serve a mandatory minimum term of 20 years in prison. RCW 9.95.115. Finally, the restart statute does not extend the discretionary minimum term because the Legislature has acted to limit the Board's discretion by requiring that first degree murderers serve 20 years' *continuous* confinement. Denial of post–sentence credit toward Mayner's prospective parole eligibility date does not extend his sentence in any manner.

Mayner also argues that RCW 9.95.115 causes him to be punished twice for the single offense of escape and thereby violates the double jeopardy clause. Mayner alleges he is being punished by applications of (1) RCW 9A.76.110(1), the first degree escape statute, and (2) RCW 9.95.115, the restart statute. We do not agree. Mayner's suspended 10–year consecutive prison sentence is the single criminal punishment for his escape offense. Application of RCW 9.95-.115 is a continuing consequence of Mayner's underlying first degree murder conviction. Mayner's punishment for murder requires him to be confined for a minimum period of 20 continuous years less good time. Mayner, by escaping, failed to satisfy this original sentence.

Double jeopardy concerns do not necessarily arise because an escape has parole eligibility consequences and, if prosecuted, has criminal consequences. A double jeopardy violation does not occur simply because two adverse consequences stem from the same act. *See State v. Williams,* 57 Wn.2d 231, 232, 356 P.2d 99 (1960); *United States v. Whitney,* 632 F.2d 654, 655–56 (5th Cir. 1980). For example, misconduct while in prison can result in a denial of good time credit and may also result in additional criminal penalties. Also, a parolee may have his or her parole revoked for conduct which both constitutes a violation of the terms of parole and serves as a basis for a criminal prosecution. *See, e.g., State v. Dupard,* 93 Wn.2d 268, 609 P.2d 961 (1980); *Standee v. Smith,* 83 Wn.2d 405, 518 P.2d 721 (1974).

*George,* at page 94, characterized the restart aspect of RCW 9.95.115 as a legislatively imposed "condition precedent" to parole. Just as a parolee may have his parole revoked when he violates some condition subsequent, Mayner can be required to restart the period prior to parole eligibility because of his violation of a condition precedent without violating double jeopardy. We find double jeopardy is not violated by the restart aspect of RCW 9.95.115. Mayner neither has had his sentence extended beyond what he is required to serve nor has he been punished twice for his

single act of escape.

The final issue raised by Mayner, which also was not discussed by the Court of Appeals, is whether section 24(2) of the Sentencing Reform Act of 1981 (SRA), RCW 9.95-.009(2), empowers the Board to consider Mayner for parole regardless of RCW 9.95.115. RCW 9.95.009(2), at the time Mayner filed his petition, stated:

> (2) Prior to its expiration [July 1, 1988, RCW 9.95-.009(1)] and after July 1, 1984, the board shall continue its functions with respect to persons incarcerated for crimes committed prior to July 1, 1984. The board shall consider the standard ranges and standards adopted pursuant to [the SRA], and shall attempt to make decisions reasonably consistent with those ranges and standards.

■■■ Mayner argues that because he was incarcerated for a crime committed prior to July 1, 1984, the Board should conform his sentence to the SRA standard range. This is correct with respect to most sentences. *See Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 730 P.2d 1327 (1986). However, the restart statute expressly mandates a mandatory minimum which exceeds the SRA standards. Where two statutes are in apparent conflict, we will if possible reconcile them to the end that each may be given effect. *State v. Fagalde,* 85 Wn.2d 730, 736, 539 P.2d 86 (1975). Applying the principle here, we conclude that the Board has not violated its duty under RCW 9.95.009(2).[1] The effect of the restart statute is simply to prohibit the Board from matching the standards in cases such as this one. *See In re Hunter,* 106 Wn.2d 493, 723 P.2d 431 (1986).

The Legislature did not repeal RCW 9.95.115, but made it inapplicable to crimes committed after July 1, 1984. RCW 9.95.900. It follows, therefore, that the Legislature

---

[1]RCW 9.95.009(2) has been amended effective July 1, 1986. It now requires that the Board give "adequate written reasons" whenever it fixes a minimum term outside the SRA standards. Laws of 1986, ch. 224, § 6, p. 728. The restart statute's requirement of a continuous 20 years less good time credit is an adequate reason.

intended RCW 9.95.115 to remain operative for crimes committed prior to that date. Because the murder for which Mayner was convicted occurred prior to July 1, 1984, the restart statute was properly applied to him.

The recently enacted legislation amending RCW 9.95 supports our interpretation that RCW 9.95.115 remains operative for pre–July 1, 1984 crimes. The new statute, effective July 1, 1986, states in part that courts rather than parole boards shall set the minimum terms of persons sentenced after July 1, 1986 for pre–July 1, 1984 crimes. Laws of 1986, ch. 224, § 7, p. 729. Because Mayner was sentenced well before July 1, 1986 for a pre–July 1, 1984 crime, this statute does not directly affect him. Nevertheless, the following portion of the new statute indicates the Legislature's intent that RCW 9.95.115 continues to apply to pre–July 1, 1984 crimes:

> The court shall attempt to set the minimum term reasonably consistent with the purposes, standards, and sentencing ranges adopted under [the SRA], *but the court is subject to the same limitations as those placed on the board under RCW . . . 9.95.115 [the restart statute]* . . .

(Italics ours.) Laws of 1986, ch. 224, § 7, p. 729. To hold that Mayner's prison sentence should be adjusted according to SRA guidelines pursuant to RCW 9.95.009(2) would be inconsistent with the continuing intent of the Legislature that RCW 9.95.115 should be applied to pre–July 1, 1984 crimes. We therefore find that RCW 9.95.009(2) does not give the Board the authority to exempt Mayner from the explicit requirements of RCW 9.95.115.

We reverse the Court of Appeals and deny Mayner's personal restraint petition.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, and DURHAM, JJ., concur.

ANDERSEN, J., concurs in the result.